## CHARLES HANDY VS. J. J. ANDREWS.

1. EVIDENCE IN CHANCERY: *Conflicting exhibits by same party.*
· It is a general rule that a party is bound by his own evidence, and will not be
   allowed to contradict it, but when a party has introduced two exhibits relating
   to the same transaction which conflict, it is erroneous to hold him bound by
   the one least favorable to himself, when the same is manifestly wrong, and the
   more favorable one is shown to be probably correct by the other proof in the
   case. Such a course sacrifices the substance to the shadow, and perverts a
   salutary rule of evidence into an instrument of injustice.

2. SAME: SAME: *Case in judgment.*
   With his answer to a bill for settlement of a partnership, the defendant, in
   response to a prayer for discovery, filed an exhibit showing the entire trans-
   action of the firm. Subsequently one of his witnesses, at the suggestion of
   his solicitor, annexed to his deposition an exhibit showing the business of the
   firm during a certain period of its existence, which was much less favorable
   to defendant than the exhibit to the answer. Other proof in the case showed
   that the exhibit filed by the witness was manifestly wrong, and that the one
   filed by defendant in person was probably correct. *Held*, to be erroneous to
   adopt the one which was evidently wrong, and reject the one which was
   probably correct, without affording opportunity for further proof and expla-
   nation.

3. REHEARING IN EQUITY: *On what terms granted.*
   The English rule is to grant a rehearing in equity when demanded by the
   circumstances of the case, upon certificate of disinterested solicitors that
   there is error in the decree, and upon payment of costs accrued, and security
   given for further costs. The rule seems to be substantially the same in
   America. In the old superior court of chancery of Mississippi the certificate
   of error was required to be signed by two disinterested solicitors, but there
   was no provision as to costs, either accrued or future. This rule approved,
   but with requirement of security for future costs.

APPEAL from the Chancery Court of *Madison* County.
Hon. WILLIAM BRECK, Chancellor.

The facts in this case necessary to a full understanding of the
principles announced are found in the opinion of the court.

*A. H. Handy*, for appellant:

An answer to the discovery required in this bill must pre-
vail unless disproved by evidence. Wigram on Dis.; 6 (mar-
gin); 11 Law Lib.; 1 Story's Eq. Jur., §§ 73, 74; Gilbert *v.*
Walker, 7 S. & M., 463; Brooks *v.* Gillis, 12 ib., 438; Mezell
*v.* Hubert, ib., 547; Miller *v.* Lamar, 43 Miss., 383. The
books and papers to which complainant had access are pre-

sumed to be correct. Collyer on Part., § 216, note 1, 2; Daniell's Ch. Pr., 1250, top p. (ed. 1871); Mason v. Beasley, 27 Miss., 106. The 5th exception should have been sustained. The commissioner's account was taken and returned without notice to defendants. 1 Hoffman's Ch. Pr., 544; 1 Newland's Ch. Pr., 341; Ch. Rule, 38, Freem. Ch., 27; 49 Miss., 761.

The adjustment was made with one or the other of the following understandings: 1st, that it was a settlement of the whole claim of Andrews upon Handy; or, 2d, the amount due on the books was left to amicable settlement. 1 Greenl. on Ev., § 207; 13 Wall., 233; 1 Story's Eq. Jur., §§ 134, 151; Adam's Eq., 188; Wesley v. Thomas, 6 Har. & J., 27.

The inducement for Handy to pay the money is shown by Calhoon's deposition, and the agreement has been violated by Andrews. Griggs v. Austin, 3 Pick., 21; Carter v. Carter, 14 ib., 428; Lyons v. Anable, 5 Cow., 355; Hill v. Rewee, 11 Metc., 271, 272. This violation is a fraud that cannot be sanctioned by a court of equity. Chit. on Con., 689, top (10th Am. ed. by Perkins); 2 Burr., 1011, 1012. The rule is to offer the rehearing on petition certified by counsel. 2 Madd. Ch., 483 (margin), note h; 1 Barbour's Ch. Pr., 357; 18 Ves., 325; 13 ib., 423. And that is the practice in this state. S. & M., 125; Rule 26, Freem. Ch., 24; adopted by chancellors, 1870, Rule 74. See, also, Daniell's Ch. Pr., 1559, and cases cited in note 1 (ed. 1865).

The court will grant a rehearing and allow new proof to be taken. Gresley's Eq. Ev., 132, 135; Walker v. Lymands, 1 Meriv., 36; Cox v. Allingham, Jac., 337; 2 Madd. Ch., 438; Hoffman's Ch. Pr., 567. Where there has been surprise, *by the court unexpectedly relying on evidence at the hearing which would be satisfactorily explained by other testimony*, the court will permit the testimony to be taken if satisfied by affidavits of its materiality. Scales v. Nichols, 2 Yer., 140; 2 Daniell's Ch. Pr., 1565.

And an appeal will lie (and of course a rehearing) from an order refusing to open proofs for the purpose of reëxamining

a witness, who, since his examination, has disclosed material facts, pertinent to the case, which he did not disclose on his original examination. Beach v. Fulton Bank, 2 Wend., 225 ; 2 Daniell's Ch. Pr., 1543 ; Roberts v. Cook, 1 Rand. (Va.), 121 ; English rule as to costs : 2 Daniell's Ch. Pr., 1560 (ed. 1865) ; 1 Barbour's Ch. Pr., 359 ; 1 Hoffman's Ch. Pr., 565. The rule in this state : Freem. Ch., 24, rule 26 ; Cotton v. Parker, S. & M., 125.

*Campbell & Calhoon*, for appellee :

The plea of submission to arbitration is of no avail ; the award may be pleaded. Daniell's Ch. Pr. (2d Am. ed. by Perkins), 768 ; Story's Eq. Pl., § 804 ; 2 Daniell's Ch. Pr., 797, 769. Hardy's answer sets up claim for compensation, for the superior value to the firm of his own services as partner over those of Andrews. This is not allowable. Collyer on Par., § 183. Arbitrators must decide all matters submitted, or there is no award. Tucker v. Gordan, 7 How., 309 ; 1 Bac. Abr., 274–282 ; 5 Eng. C. L. R., 20 ; 16 East, 58. It would be hard if an inefficient partner should be running himself into debt without knowing of any claim against him.

In the evidence appears, but nowhere else, a good deal about Andrews' habits as to sobriety. Suppose he injured the business, what has that to do with the case ? A party cannot make a different case, by the proof, from that in his pleadings.

As to the account in Exhibit II, net commissions received by Handy & Andrews, July, 1872, to August 1, 1873, $18,486.08 ; net commissions on policies issued by Handy & Andrews, same time, as shown by Handy's answer (Exhibit II), $9,570.86. By the proof, a balance not accounted for, one-half due Andrews, $8,915.22.

It is curious to note that it was to Handy's interest in his answer to make the net receipts as *small* as possible, and, in the proof, as as *large* possible—his theory of Andrews' inefficiency. If Exhibit 2 to the answer be true, Andrews was paying him, while absent, a sum in lieu of his services considerably larger than his share of the profits. If Exhibit

II in the proof be true, his absent partner has been most outrageously imposed upon. He has involved his pleadings and his proof in an irrepressible conflict, from which no genius can extricate him on a basis consistent with correct dealings. Other statements of the account are equally conflicting and inconsistent with the pleadings, but tending to show large balances due to Andrews. He attempts to make Andrews pay his brother's debts to himself. One partner cannot shift the securities of the firm without the explicit consent of the other partner. Minor v. Garr, 11 S. & M., 322 ; Buck v. Moseley, 24 Miss., 172 ; Rogers v. Batchelor, 12 Pet., 232.

*Error of judgment*, or mistake of law by counsel, as to the pertinency or force of evidence, furnishes no grounds for a rehearing. Note 1 to 3 Daniell's Ch. Pr., 1681 ; Baker v. Whiting, 1st C. C., 218 ; Jinkins v. Eldridge, 3d C. C., 299, 316 ; Decarters v. Leforge, 1 Paige, 574. Rehearings are not matters of right, but rest in the sound discretion of the court. Daniels v. Mitchell, 1st C. C., 198 ; Land v. Wickham, 1 Paige, 256 ; Travis v. Waters, 1 Johns. Ch., 48 ; Field v. Shieffelin, 7 ib., 256. Not on discovery of new evidence on new matter. 3 Vt., 148. Nor where the newly-discovered evidence is merely cumulative. Note 1 to 3 Daniell's Ch. Pr., 1681. The court may decree costs to either party, or may divide them. Code, 1871, § 1035 ; 3 Daniell's Ch. Pr., 1515, 1516, 1607, and notes, 1610.

CHALMERS, J., delivered the opinion of the court.

This was a bill filed by Andrews for settlement of the account of a partnership previously existing between himself and Handy, as state agents of the American Life Insurance Company.

Before the institution of the suit the matters of difference were submitted to arbitration. The arbitrators performed only a portion of their duty, deciding that Handy should pay to Andrews $2,500, partly in cash and partly on time, for his

interest in the renewal premiums to accrue to the concern upon the policies previously taken by the firm, and leaving open the question what, if anything, was due Andrews upon the books of the firm, arising out of past collections. Both parties were dissatisfied with this award, but, after several interviews between Handy and Calhoon, the solicitor of Andrews, the money was paid. This suit being afterward commenced, the performance of the award was pleaded in bar by Handy, as constituting a settlement in full, and the refusal of the chancellor to so regard it is assigned for error. An attentive perusal of the evidence fails to satisfy us that this was erroneous. The award showed upon its face that it was not in full, and, though both parties expressed dissatisfaction with it, Handy averred a willingness, somewhat reluctant, to abide by it. Andrews, on the contrary, insisted upon a bill being filed to set it aside. In the interviews between Handy and Calhoon the point discussed seems to have been in relation to whether the whole amount should be paid in cash, and, if so, what discount should be allowed therefor. It is quite evident that both parties regarded the matter of the amount that might be due on the books as being left open, since they parted with assurances on the part of Handy that the books would show little or nothing due Andrews, as could be demonstrated at any time by an inspection of them. Counsel for appellant insists that, if the payment of the award was not received as in full, it was at least coupled with an agreement that there should be no litigation, but that all other matters should be arranged by a mutual, amicable examination of the books, and that, therefore, before suit could be maintained, it was Andrews' duty to have paid back the money which he had received upon this understanding.

We do not so understand the proof. There was indeed much talk between Calhoon and Handy about a friendly investigation of the books, and we think it probable that they parted with the idea on both sides that further matters would

be settled in that way.. We do not think, however, that this expectation constituted any part of the consideration for the payment or reception of the money.

The bill was filed for a settlement of all past transactions. It resulted in a decree in favor of Andrews for more than $7,000. The record is exceedingly voluminous, containing exhibits showing the entire business transactions of the firm during its three years of existence, and covering more than 700 pages. The principal of these exhibits is the one filed with the answer of Handy, marked No. 2, and produced in obedience to Andrews' prayer for a discovery. It purports to give a full, true, and perfect transcript from the books of all the dealings of the firm. Its correctness is attested by the oath of defendant and by the deposition of the book-keeper and of some other clerks. It showed by its balance an inconsiderable amount due complainant.

During the progress of the case, and while one Gould, a witness for defendant, was being examined, defendant's solicitor, desiring to show the commissions derived from policies issued by the firm from July, 1872, to August, 1873, handed to the witness a memorandum thereof prepared by the book-keeper, and asked Gould if the same was correct.

Gould answered that it was, as he knew by a personal inspection which he had made of the books. This memorandum, filed with the deposition of Gould, and known as Exhibit II, shows an excess in receipts, during the time specified, of $8,915.22 over the showing made during the same period by Exhibit No. 2. Upon the hearing, therefore, the chancellor, by an interlocutory decree, adopted this Exhibit II as giving the correct statement of the receipts during the time embraced by it, and adopted Exhibit No. 2 as to the balance of the time. A commissioner was appointed to state an account upon this basis. The amount shown to be due complainant by this exhibit forms a large part of the sum decreed in his favor, and its allowance constitutes the principal error relied on.

Exhibit II was manifestly erroneous. It showed, for in- stance, that during the period covered by it the net earned commissions retained by the firm amounted to something more than $18,000, while the amount paid out by them to sub-agents was something more than $6,000. That this is a gross error is shown by all the proof in the case, which establishes the fact, unquestioned indeed, that the amount paid to sub-agents always exceeded that retained by the firm, and was usually twice as great. It is evident, also, that Exhibit II showed large sums as earned by the firm during the period covered by it, which were also embraced in that portion of Exhibit No. 2 which gave the transactions of the firm anterior to that period, so that when the court adopted Exhibit No. 2 down to July, 1872, and Exhibit II after that time, these sums were counted twice. These errors in Exhibit II, and the manner of their occurrence, were shown upon the coming in of the commis- sioner's report, to which exceptions were filed, and also upon an application for a rehearing, subsequently made.

The exceptions to the report were overruled, and final decree rendered upon the basis indicated. Counsel for appellee insists that even if Exhibit II was erroneous, and did appellant injustice, he cannot complain, because it is his own paper, introduced by himself, and substantiated by his witness. We do not concur in this reasoning. It was shown by affidavits that solicitor for defendant, having called upon the book-keeper of the firm for certain information, was furnished by him with this paper. Supposing it authentic, it was presented to the witness Gould, by him declared correct, and annexed as an exhibit to his deposition. The errors in it were not discovered until disclosed by the argument of opposing counsel on the final hearing. Under such circumstances, to refuse to allow defendant, upon reasonable terms, to controvert it, for the reason that he himself had offered it, when its injustice was made manifest by the testimony in the case, was sacrificing the substance to the shadow, and perverting a salutary rule of evidence into an instrument of injustice. The chancellor seems

to have become satisfied that wrong had been done defendant by the decree, and, upon application, granted a rehearing, but upon terms so onerous that defendant declined to accept them, and preferred to bring the case here by appeal. . The terms were that defendant should pay all the costs of the litigation; that the books, with which he was still conducting business, shou'd be taken out of his possession and put in the hands of a commissioner, and that he should pay for all testimony thereafter taken by either party. These terms were extraordinary and unwarranted. They amounted to a requirement that defendant should purchase the right to have correction made of the injustice that had been done him.

The English practice in regard to rehearings is to grant them upon petition certified by solicitors, and upon payment of costs accrued since the decree, and security given for future costs. 2 Daniell's Ch. Pr., 1560.

The rule seems to be substantially the same in America. 1 Barbour's Ch. Pr., 353, *et seq.*

By the rules of the old superior court of chancery of Mississippi the certificate was required to be signed by two disinterested solicitors, but there were no conditions imposed as to costs. Rule 26, Freem. Ch., 24; S. & M., 125.

We think that this rule, coupled with a requirement of security for future costs, a safe one.

It is unnecessary to notice the other assignments of error.

For the errors indicated, both the final and the interlocutory decree will be reversed and the cause remanded, with the right to both parties to take further testimony.

Should it be deemed advisable to appoint a commissioner to examine the books of the firm, or to take and state an account therefrom, said commissioner, together with complainant and his solicitors, will be allowed to have access thereto at all reasonable hours, or, if preferred, within certain specified hours of each day.

Mr. Justice Campbell, having been of counsel, takes no part in this decision.