# Thompson v. Alexander City Cotton Mills Co.

## Injury to Child.

(Decided December 17, 1914.  Rehearing denied January 21, 1915.
67 South. 407.)

1. *Negligence; Licensee; Children.*—Where a child of an employee of a cotton mill was killed by falling into a drain into which the mill discharged the hot waters from the boilers when cleaning them, where such drain was situated in an open square made by the building and the tenement houses of the employees, in which the employees and the children were wont to congregate, such child was a licensee, although the drain was obscured by slag and briars.

[Thompson v. Alexander City Cotton Mills Co.]

2. *Same; Attractive Nuisance; Drain.*—A drain to take off the hot water of the boilers of the cotton mills, difficult to approach at its head by reason of slag and briars, and greatly obscured, although situated in a square in which the employees and other children were accustomed to congregate, and into which the water was discharged only once a day for two hours, was not an attractive nuisance.

3. *Same; Turn Table Doctrine.*—Although a dangerous thing may not be an attractive nuisance, yet if it is left exposed so that children are likely to come in contact with it, and their getting in contact with it is obviously dangerous to them, the persons exposing the dangerous thing should reasonably anticipate the injury that is likely to happen to them, and is bound to take reasonable pains to guard it so as to prevent injury.

4. *Same; Evidence.*—The evidence examined and held sufficient to sustain a verdict for defendant, charged with the death of a child caused from falling into a drain into which hot water was discharged once a day.

5. *Appeal and Error; Parties Entitled to Allege.*—Where plaintiff brings the appeal, the overruling of a demurrer to his complaint will not be considered.

6. *Same; Harmless Error; Evidence.*—Where witness answered the question, any error in sustaining objection to the question was cured.

7. *Witness; Examination.*—Where the action was for the death of a child from falling into a drain containing pools of hot water, questions to witnesses as to whether children habitually played about the pool were leading and too general.

8. *Charge of Court; Argumentative.*—A charge asserting that it was not necessary to prove that the pool of water was not of itself attractive to children, was properly refused as argumentative, in an action for the death of a child caused by falling into the drain into which was discharged hot water from the boilers of the cotton mill.

9. *Same; Applicability to Evidence.*—Where there was no attempt to show that the necessity of a blow pipe was an excuse for negligence, and there was no showing whether the place of discharge, as distinguished from other places in the drain, was guarded or not, a charge asserting that the necessity for having the blow-off pipe in the operation of the mill was not an excuse for negligence in not having the place of discharge properly guarded, was abstract and misleading.

10. *Same; Argumentative.*—Charges intending to answer argument of counsel or based on a defense not involved on the trial, should be refused.

11. *Same.*—A charge that plaintiff was not required to prove the nature of children, since the jury is presumed to know such nature as well as the witness, was properly refused, as argumentative, in an action for the death of a child, from falling into a drain.

12. *Same; Misleading.*—A charge that it was not necessary that plaintiff prove that defendant actually knew that any child ever actually went or played in any part of the open space in which

the drain was situated, nor that defendant actually knew that such open place was attractive to children, was misleading and properly refused in an action for the death of a child from falling into a hot water drain.

13. *Bill of Exceptions; Striking Out Instruction.*—Where no objections were interposed to the oral charge, and no exceptions are reserved to it as a whole, or to any part of it, and it is as a whole incorporated into the bill of exceptions by the party taking the appeal, it is not error for the trial judge to strike it from the bill before signing.

14. *New Trial; Instructions; Duty of Court.*—Where the court refused certain charges on the sole ground that they contained typographical errors or misprisions, it is not reversible error or ground for new trial that the trial court failed to call attention of counsel to such errors or misprisions.

APPEAL from Tallapoosa Circuit Court.

Heard before Hon. S. L. BREWER.

Action by Mrs. L. H. Thompson, administratrix, etc., against the Alexander City Cotton Mills Company. From a judgment for defendant, and from an order denying a motion for a new trial, plaintiff appeals. Affirmed.

The action is to recover damages for the wrongful death of plaintiff's child, a boy eight years of age. The boy was killed by falling into a ditch or drain that at the time contained hot water. The ditch was used by the defendant for carrying off the hot water from its boilers. During a long-continued use for this purpose the water had washed out holes in the botton of the ditch, into which the hot water would collect when the boilers were washed out. There was a discharge pipe from the boilers, which emptied the water into this ditch, through which it flowed off from the mill. This ditch was estimated to be from 1 to 3 feet wide, and from 1 to 2½ feet deep; and the water which collected in these holes, or pools, as they are sometimes called, was estimated to be from 6 to 18 inches deep, when the water was discharged from the boilers, through the discharge pipe, into this ditch. This hot water was thus

discharged about once a day, usually from 1 to 3 o'clock in the afternoon, when the boilers were cleaned. At the head of this ditch into which water was discharged, one side or bank of the ditch had grown up in briars, which hung over the ditch, and on the other side slag or cinders, from the boiler, had been dumped out, thus forming heaps or dump piles, making the head of the ditch not easily accessible by pedestrians. It could be approached, however, as was done by the deceased, by coming up the ditch and thus avoiding the barriers and other obstructions. This ditch, or drain, as it is more accurately described, some 25 or 30 feet from its head, crossed a road which was used by the defendant and its employees and others having occasion to use the defendant's premises. The defendant's premises, on which the ditch or drain was located, formed a hollow square, two sides of which were dotted with tenement houses occupied by the defendant's employees, one of whom was the father of the unfortunate boy. The other two sides of the square were occupied by the cotton mill buildings, machinery, etc., of the defendant. Within this square, near the center, was a water tank into which cold water was pumped, and from which it was used by defendant and its employees for domestic purposes, and from it had formed a small drain through which overflow and waste water, flowing to a point several yards below, united with the hot water mentioned as flowing in the other ditch or drain. The space around this tank or standpipe was open, as was most of the hollow square above described, which covered two or three acres, and in this square the children of the employees, including the unfortunate boy, were accustomed to play. While the evidence showed that children habitually played in this square and around the

water tank, it did not show without dispute that they habitually played around the head of this ditch or drain into which the hot water was discharged from the drain, or blow-off pipe. The evidence all showed that the hot water was difficult of approach, and was so obscured and shut off from view that the existence of such holes or pools was not known by those who lived near it, and who constantly used water from the cold water tank or standpipe.

The evidence of the father and the mother of the unfortunate child shows that it was a secluded spot, and anything but attractive to either children or grown persons. From the very nature of things, it could not have been at all dangerous, except for 20 or 30 minutes, at most, during each day. In fact, it appears that on this occasion neither the deceased nor his companions knew of the presence of the hot water. They were engaged in boyish sport, trying to see who could throw the most stones into the end of the exhaust pipe, when the deceased slipped and fell into one of the pools or holes of hot water.

The evidence, therefore, wholly fails to show that they were attracted there by the pools or holes of hot water, but rather shows that it was the end of this pipe, which formed the target at which they were throwing stones, that attracted them. It would have been just as attractive if it has discharged cold water or had discharged none at all.

This defendant, so far as this evidence shows, would have been just as liable for an injury, had there been no water in the ditch, and the boy had broken his neck, leg, or arm, in falling, instead of being scalded, as he was. That is to say, it was not the hot water which attracted him to the spot where he received the injury.

P. O. STEVENS, and HARSH, BEDDOW & FITTS, for appellant.

GEORGE A. SORRELL, for appellee.

MAYFIELD, J.—The question in this case. which underlies all others is this: Did the defendant owe a duty to its employees or their children, using its grounds, to fence or otherwise safeguard the ditch or drain which carried off the hot water from its boilers, so as to prevent accidents like the one which befell plaintiff's son in this case? It is not disputed that the discharge or blow-off pipe was a necessity in defendant's lawful business, nor that hot water of necessity had to escape therefrom and be carried off; the acute question is: Should the ditch or drain in which the holes or pools had formed, and into which the deceased fell, have been fenced or otherwise safeguarded, so as to prevent or render less probable accidents like the one in question to the children of its employees?

(1, 2) We think it is safe to say that the alleged dangerous agency here complained of cannot be truly classed as an "attractive nuisance." Nor can the deceased be classed as a trespasser. His relation to the premises, upon which he was injured was that of a licensee. The liability of the defendant, in this case, if such there be, must depend upon the doctrine of the turntable cases. This doctrine was first announced in the United States in the familiar case of *Sioux City R. R. Co. v. Stout,* 17 Wall. (U. S.) 657, 21 L. Ed. 745, and was subsequently followed by the same court in the case of *Union Pacific R. R. Co. v. McDonald,* 152 U. S. 262, 14 Sup. Ct. 619, 38 L. Ed. 434. An examination of Rose's notes to the report of these cases shows that the state courts are divided in opinion as

to the correctness of the doctrine announced in *Stout's Case*. This court, however, is committed to the correctness of the doctrine, and has followed it in a turntable case—that of *Alabama Great Southern Railroad Co. v. Crocker*, 131 Ala. 585, 31 South. 561.

While this is not a turntable case, but a "pool," "pond," or "hole of water" case, yet the liability in the two classes of cases largely, but not entirely, depends upon the same doctrine. A number of this last class of cases will be found reported in the various state reports; and here, as in the turntable cases, there is a lack of harmony in the decisions. There is a very valuable note in 7 Ann. Cas. p. 200 et seq., appended to the report of the case of *Sullivan v. Huidekoper*. In most of the reported cases, the injured child was a trespasser, and not a licensee, as in this case. In all the cases in which defendants have been held liable under this doctrine, whether the injured person was a trespasser or a licensee, it was shown that the defendant either had actual knowledge, or was chargeable with knowledge, both of the dangerous character of the particular premises or agency and of the fact that the same was attractive to children, and that they were in the habit of trespassing, or would form the habit, if licensees, of playing in, upon, or with the dangerous agency. The strongest cases, fixing liability, which we have found, are the cases of *Pekin v. McMahon*, 154 Ill. 141, 39 N. E. 484, 27 L. R. A. 206, 45 Am. St. Rep. 114, *Donk Bros. v. Leavitt*, 109 Ill. App. 385, and *Brinkley Co. v. Cooper*, 60 Ark. 545, 31 S. W. 154, 46 Am. St. Rep. 216. In each of these cases it was held that the defendant, to be liable, must know, or be chargeable with notice, that the premises are dangerous, and are attractive to children, and that injury to children will probably result. None of these cases

makes the owner of the premises absolute insurer against such injuries to children, whether licensees or trespassers. In none of the turntable or water pool cases is the owner held liable, except for injuries which a reasnably prudent person so situated ought to have anticipated and provided against.

(3) The rules of law applicable to this case are well stated by Mr. Thompson in his valuable work on Negligence, as follows (section 1030) : "We now come to a class of decisions which hold the landowner liable in damages in the case of children injured by dangerous things suffered to exist unguarded on his premises, where they are accustomed to come with or without license. These decisions proceed on one or the other of two grounds: (1) That, where the owner or occupier of grounds brings, or artificially creates something thereon, which, from its nature, is especialy attractive to children, and which, at the same time, is dangerous to them, he is bound, in the exercise of social duty and the ordinary offices of humanity, to take reasonable pains to see that such dangerous things are so guarded that children will not be injured by coming in contact with them. (2) That, although the dangerous thing may not be what is termed an 'attractive nuisance' (that is to say, may not have especial attraction for children by reason of their childish instincts), yet where it is so left exposed that they are likely to come in contact with it, and where their coming in contact with it is obviously dangerous to them, the person so exposing the dangerous thing should reasonably anticipate the injury that is likely to happen to them from its being so exposed, and is bound to take reasonable pains to guard it, so as to prevent injury to them.'"

In 1 Street's Foundations of Legal Liability, pp. 160, 161, the reasons for the liability in the turntable cases

is thus stated: "Liability in the turntable cases is frequently put upon the ground of implied invitation to children to come upon the premises in order to play there; the invitation being supposed to arise from the attractive nature of these dangerous engines. This hypothesis is hatched up to evade the obstacle which arises from the fact that plaintiff is a trespasser. But it is as unnecessary as it is inadequate and artificial. Liability is to be ascribed to the simple fact that the defendant, in maintaining a dangerous agent from which harm may, under particular conditions, be expected to come, has the primary risk, and must answer in damages, unless a counter assumption of risk can be imposed on those who go there to play."

While the unfortunate child in this case, as before stated, was not a trespasesr, yet he was not at the particular place at which he received his injuries, at the request or invitation, express or implied, of the defendant. His relation to this particular spot was, at best, that of a mere licensee.

(4) As the jury found in favor of the defendant, and we find no reversible error in the record, it is not necessary for us to decide whether there was any evidence sufficient to authorize the jury to find for the plaintiff under the count based on simple negligence.

(5) There was no error in sustaining the demurrer to the original complaint. It was clearly subject to some of the ground of demurrer interposed. We do not desire to be committed to the proposition that the amended complaint was not subject to the demurrer interposed; but, as the demurrer to it was overruled, we will not consider the question on this, the plaintiff's appeal.

(6, 7) There was no error in sustaining the objection to the question asked the witness as to whether chil-

dren habitually played about the pool. The question was both too general and leading, and moreover the record shows that the witness did answer the question.

There was no error in giving the affirmative charge for the defendant as to the wanton count. There was no evidence of wantonness.

The charge given limited the finding to the second count, which was the wanton count, and it was not bad form. It read as follows: "If the jury believe all the evidence, they cannot find for the plaintiff as to the second count."

There was no error in refusing any one of plaintiff's requested charges 1, 2, 3, or 4, which were as follows: (1) "In order to recover a verdict in this case, it is not necessary for plaintiff to prove that the pool of water, if there was such a pool, was in and of itself attractive to children."

(2) "The necessity for having the blow-off pipe in the operation of the mill is no excuse for negligence, if there be such, in not having the place of discharge properly fenced or otherwise guarded, if the jury believe from the evidence that he did not have such place properly fenced or otherwise guarded."

(3) "In order for the plaintiff to recover a verdict, it is not necessary that the plaintiff prove that the defendant actually knew that any child ever actually went or played in any part of any open space referred to in the complaint, nor that defendant actually knew that such open place was attractive to children."

(4) "The plaintiff is not required to prove to the jury the nature of children, for the jury is presumed to know such nature as well as witnesses could know it."

(8) Charge 1 was argumentative, and possessed misleading tendencies as applied to the pleadings and the proof.

13—190

(9) Charge 2 was in a sense abstract. While there was proof that a blow-off pipe was a necessity, there was no attempt in pleadings or in proof to show that such necessity was an excuse for any negligence. There was neither allegation nor proof as to whether the place of discharge, as distinguished from the pools of hot water, was fenced or guarded, or was exposed, or whether it should have been so guarded.

(10) Charges intended to answer argument of opposing counsel, or based upon a defense not involved on the trial, are properly refused.—*Green v. Brady,* 152 Ala. 507, 44 South. 408. The charge also possessed misleading tendencies.

(11) Charge 3 was well calculated to mislead the jury, and was properly refused.

(12) Charge 4 was a mere argument. If the jury knew as much about the nature of children as do the witnesses, then they know as much about the subject as does the judge, and it is not necessary for him to so instruct them.

Charges 5 and 6 evidently contain typographical errors, which destroy their sense and meaning. However, if these charges read as appellant contends they should read, they were properly refused, as being argumentative and misleading—tending to confuse the jury —as applied to the pleadings and the proof. While charge 6 was evidently attempted to be copied from the opinion in *Crocker's Case,* 131 Ala. 590, 31 South. 561, it does not follow that it was error to refuse it in this case. Many things are often properly said in opinions and decisions which are not proper to be embraced in a requested charge, as was attempted in this case. This principle was been frequently stated by this court.— *Matthew's Case,* 142 Ala. 298, 39 South. 207; *Holmes' Case,* 97 Ala. 332, 12 South. 286.

[Thompson v. Alexander City Cotton Mills Co.]

(13) Where no objections are interposed to the oral charge, and no exceptions are reserved to it as a whole, or to any part thereof, and it is as a whole incorporated into the bill of exceptions by the party taking the bill, it is not error for the trial judge to strike it out of the bill before signing it. Whether it could be properly allowed to remain, we do not decide, because the question is not before us.

(14) We are not willing to hold that it is reversible error or ground for a new trial for the trial court to fail to call the attention of counsel to typographical errors or misprisions in requested charges, when they are refused on that ground alone. While the trial court may properly do so if he chooses, we are unwilling to hold it error to fail so to do. Our statute not only authorizes, but requires, the trial judge to give or to refuse charges in the language in which they are requested. The uniform practice in this court has been to uphold trial courts in refusing charges which contain such typographical errors as render the charge bad or tend to mislead.

There was no error in denying the motion for a new trial. The evidence falls far short of proving the complaint without conflict.

Affirmed.

Anderson, C. J., and Somerville and Gardner, JJ., concur.