(86 South. 3)

## GANDY v. COPELAND. (6 Div. 987.)

(Supreme Court of Alabama. June 10, 1920.)

**1. Negligence ⬉32(1) — Landowner's duty stated.**

One may permit his land to be so used by others that they may reasonably presume that he will give notice of a change in conditions rendering such use unsafe, and if he places dangerous structures thereon which may be reasonably apprehended to be dangerous to those so using the land he is not exonerated from liability for their injuries by reason of fact that they were on land on other business than with owner or occupier.

**2. Negligence ⬉33(1)—Duty to trespasser stated.**

A mere trespasser upon the premises of another can claim from the owner no further duty than that traps or pitfalls may not be set or permitted in his way.

**3. Negligence ⬉39—Attractive nuisance doctrine defined.**

One who erects or permits an attractive nuisance on his land, so that children are likely to come in contact with it, knowing that children will be attracted thereto and that contact therewith is dangerous, is required to take reasonable care to prevent injuries from contact therewith.

**4. Negligence ⬉111(1)—Complaint for death of child through attractive nuisance held insufficient.**

In an action for the death of a child who fell into well or spring on defendant's land, counts *held* insufficient as declarations for an attractive nuisance, as the well or spring was not alleged to be of artificial construction, but from the facts alleged might be inferred to be a natural reservoir or source of water supply that had existed on the land a long time prior to the injury.

**5. Negligence ⬉111(1)—Counts held insufficient to charge death from trap or pitfall.**

In an action for the death of a child who fell into a well on defendant's land, counts *held* insufficient to state cause of action for death from trap or pitfall.

**6. Negligence ⬉112 — Willful or wanton counts held insufficient.**

In an action for death of a child who fell into a well on defendant's land, counts seeking recovery for willful or wanton conduct *held* insufficient, in that the facts of the quo modo of the inquiry averred did not support the conclusion of pleader.

Appeal from Circuit Court, Jefferson County; C. B. Smith, Judge.

---

⬉For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

[1] Ante, p. 356.

Action by A. J. Gandy, as administrator of the estate of Joseph Gandy, against John R. Copeland for damages for the death of his intestate. From a judgment sustaining demurrer to the complaint, plaintiff appeals. Affirmed.

As originally filed the complaint contained three counts. Count 1 alleges that on the 13th day of March, 1916, plaintiff's intestate fell into an open well uninclosed on premises owned by defendant and was drowned in the water therein contained. It is averred that decedent lost his life as a proximate consequence of the negligence of the defendant, in that defendant negligently allowed a well to remain open and uninclosed on said premises, upon which plaintiff's decedent was a licensee. Count 2 is the same as 1, with the averment that plaintiff's intestate lost his life as a proximate consequence of the negligent failure of the defendant to keep a well or deep hole, into which plaintiff's intestate fell, properly guarded or inclosed, and that the defendant knew that the premises upon which said well or hole was located, and which were owned by him and under his control, were attractive to children in that community as a playground, and that the danger to them from said open well or hole into which decedent fell and lost his life was well known to defendant at and before the plaintiff's intestate lost his life as aforesaid. Count 3 alleges that defendant was the owner of certain premises in the corporate limits of Birmingham, in Jefferson county, Ala., upon which or in which there was a deep hole or well, and plaintiff well knew that such premises were used by children in the community and neighborhood of said premises as a playground, and that children were in the habit of using such premises as a playground and that said premises were attractive to them for such purpose, and defendant knew that the well or deep hole located on said premises was dangerous to the children using said premises as a playground. And plaintiff avers that his son and intestate, Joseph Gandy, while using said premises as a licensee and playing on said premises as he had been in the habit of doing before that time, fell into said deep hole or well and thereby lost his life, and plaintiff avers that the death of said decedent was proximately caused by the negligence of defendant in allowing said deep hole or well to be in an uninclosed, open, and dangerous condition. Demurrers having been sustained, plaintiff amended his complaint by adding ten counts numbered from A to J, inclusive.

Count A is as follows:

Plaintiff, who sues as administrator of the estate of Joseph Gandy, deceased, claims of the defendant $50,000 as damages, for that heretofore, to wit, on the 14th day of March, 1916, the said defendant owned or controlled a parcel of land in the city of Birmingham, Jefferson county, Ala., and on, to wit, said date there was, and had been for a long time prior thereto, a deep well or spring with water contained therein located thereon, and plaintiff avers that said well or spring was uncovered and unprotected from people falling therein, and that said premises were attractive to children as a playground and that same were frequently used by children for that purpose, and that many people passed and repassed thereon.

Plaintiff further avers that said premises and said well or spring were in an unsafe, dangerous condition and that said defendant knew it, or by the exercise of common judgment and prudence should have known it, and it became and was the duty of defendant to place a cover upon or protect said well or spring; and plaintiff further avers that while his intestate, a minor, to wit, nine years and three months, was flying a kite on said premises on, to wit, said date, he backed or fell into said well or spring, and as a proximate consequence thereof he was drowned in the water therein contained.

Plaintiff avers that he sustained the foregoing injuries and damages as a reason of, and as a proximate consequence of, the negligence of the defendant, in this, to wit, in negligently failing or refusing to place a cover upon or protect said well.

Count B: Same as A down to and including the words "in the water therein contained," and adds:

Plaintiff avers that he sustained the foregoing injuries and damages for the reason of, and as a proximate consequence of, the defendant wantonly, willfully, or intentionally causing, permitting, or allowing said well or spring to be in an uninclosed, open, and dangerous condition on said date, as aforesaid.

Count C: Same as count B, except it is alleged that defendant wantonly or willfully or intentionally failed or refused to place a cover upon or protect said well or spring.

Counts D and E use the same inducement as count A, and claim a negligent failure to comply with section 543 of the Code of the city of Birmingham, requiring all vessels or other thing containing standing water to be screened, and section 592, prohibiting the creation or maintenance of a nuisance.

Count F is the same practically as count C, as are counts G and H.

Counts I and J are practically the same as counts D and E.

The other pleadings sufficiently appear from the opinion of the court.

James Barton and Burgin & Jenkins, all of Birmingham, for appellant.

Under the allegations of the various counts of the complaint, it was the duty of the defendant to exercise due care to prevent injury to children attracted to his premises, and his failure to do so renders him liable in damages for injury caused thereby. 131 Ala. 584, 31 South. 561; 161 Ala. 153, 49 South. 772; 152 U. S. 262, 14 Sup. Ct. 619, 38 L. Ed. 434. The doctrine of the turntable cases

is a general rule applicable to conditions of any kind that are dangerous and calculated to entice children, who may be too young to know their dangerous character. 100 Ark. 76, 139 S. W. 301, 38 L. R. A. (N. S.) 754; 128 Tenn. 433, 161 S. W. 997, Ann. Cas. 1915C, 283; 164 Mich. 251, 129 N. W. 29, Ann. Cas. 1912B, 866; 33 Utah, 222, 93 Pac. 570, 14 L. R. A. (N. S.) 619, 126 Am. St. Rep. 828, 14 Ann. Cas. 1004; 18 Colo. App. 142, 70 Pac. 440; 41 Okl. 227, 137 Pac. 724, 51 L. R. A. (N. S.) 672, Ann. Cas. 1915C, 290; 90 Kan. 379, 133 Pac. 551; 133 Pac. 1040; 69 Wash. 419, 125 Pac. 147; 154 Ill. 141, 39 N. E. 484, 27 L. R. A. 206, 45 Am. St. Rep. 114; 11 Am. Neg. Rep. 496; 108 Ind. 530, 9 N. E. 155, 58 Am. Rep. 65; 154 Pa. 109, 26 Atl. 304; 130 La. 833, 58 South. 589, 40 L. R. A. (N. S.) 671; 66 S. W. 609; 58 Kan. 551, 50 Pac. 450, 62 Am. St. Rep. 625. There is a positive duty on every person to so use his property as to not injure others. 2 Ala. App. 652, 56 South. 830; 78 S. C. 10, 58 S. E. 960, 12 L. R. A. (N. S.) 468.

Tillman, Bradley & Morrow, of Birmingham, for appellee.

A landowner is not liable to a trespasser or bare licensee for an injury sustained on his private premises, unless in contact with a trap or pitfall, or unless it is wantonly or intentionally done. 129 Ala. 399, 29 South. 798; 156 Ala. 202, 47 South. 185, 130 Am. St. Rep. 76; 179 Ala. 304, 60 South. 927; 194 Ala. 78, 69 South. 131, L. R. A. 1916A, 510; 29 Cyc. 449; 194 Ala. 78, 69 South. 131, L. R. A. 1916A, 510. This rule applies to children, as well as adults. 116 Ala. 300, 22 South. 546, 38 L. R. A. 458, 67 Am. St. Rep. 116; 115 Cal. 345, 47 Pac. 113, 598, 56 Am. St. Rep. 106; 116 Ala. 642, 22 South. 900; 124 Ala. 113, 27 South. 422, 82 Am. St. Rep. 153; 177 Fed. 374, 101 C. C. A. 428, 28 L. R. A. (N. S.) 98, 21 Ann. Cas. 746. The only exception to this rule is known as the attractive nuisance doctrine, first laid down in the turntable cases; but the facts of this case do not bring it within this doctrine. 191 Ala. 646, 68 South. 154; 161 Ala. 153, 49 South. 772. Counsel discuss this doctrine with reference to the decisions in other states, and cite the following authorities, among others: 53 Mont. 254, 163 Pac. 473; 116 Mo. App. 545, 92 S. W. 734; 127 N. C. 328, 37 S. E. 468, 52 L. R. A. 359; 76 N. W. 48; 122 Ga. 853, 50 S. E. 1003. Wantonness or intentional misconduct cannot be predicated of such passive conduct as is here alleged. 197 Ala. 74, 72 South. 366; 74 Fed. 350, 20 C. C. A. 436; 120 Ga. 521, 48 South. 166; 144 Cal. 473, 77 Pac. 1001, 1 Ann. Cas. 206; 66 N. Y. 243; 119 Wis. 441, 96 N. W. 800.

THOMAS, J. The appeal is from rulings sustaining demurrer to the complaint in its original form and as first amended and as last amended by the addition of counts K, Z, Z–1, Z–2, Z–3, and Z–4. Plaintiff declined to plead further, and there was judgment for defendant.

The several counts may be classified as being for simple negligence, framed on the theory of the "turntable cases" (amended counts K, Z–1, Z–2), and for the willful, wanton, or intentional conduct of defendant (amended counts Z, Z–3, and Z–4).

[1] The owner or occupier of real estate, without protest or objection, may permit his land or premises to be so used by the public or others in such manner and for such time that those who thus use it may reasonably presume that the owner or occupier will give notice of a change in the condition made or permitted by him, which would render said place and its use unsafe so to continue its use. If, under such use by the public or others with permission, express or implied, and with knowledge of the same, the owner or occupier should place, leave, or permit to be placed or left a dangerous structure, instrument, obstruction, or defect in said way, building, structure, or premises from which may be reasonably apprehended danger or injury to those accustomed to such use, such owner or occupier assumes the primary risk; that is to say, under such circumstances the owner or occupier is not exonerated from liability to another for injury resulting from such use, because the injured party was then on other business than with the owner or occupier. The knowledge of the use and condition thereof that was dangerous imposes the duty to keep the premises so used by such others in a reasonably safe condition for those who are requested or have a right to come there. Mudd v. Gray, 200 Ala. 92, 75 South. 468, 470; Sou. Ry. Co. v. Bates, 194 Ala. 78, 94, 69 South. 131, L. R. A. 1916A, 510; Scoggins v. A. & G. P. C. Co., 179 Ala. 213, 221, 222, 60 South. 175; A. G. S. Ry. Co. v. Godfrey, 156 Ala. 202, 212, 47 South. 185, 130 Am. St. Rep. 76; Montg. & Eufaula Ry. Co. v. Thompson, 77 Ala. 448, 456, 54 Am. Rep. 72.

[2] A mere trespasser who goes upon the premises of another on business of his own, not connected and associated with that transacted or carried on at such place by the owner or occupier, or who goes thereon as a mere pleasure seeker, or as one prompted only by curiosity, can claim from the owner or occupier of the premises no further duty than that traps or pitfalls may not be set or permitted in his way. Sic utere tuo ut alienum non lædas is, likewise, the basis of the leading cases on the question of liability for injuries that result from "traps and pitfalls," or from "attractive nuisances," or from causes in the nature of an attractive nuisance, where such doctrines have been applied. A. G. S. R. Co. v. Crocker, 131 Ala. 584, 590, 31 South.

561; Athey v. T. C. I. & R. Co., 191 Ala. 646, 651, 68 South. 154; Thompson v. Alexander City Cot. Mills Co., 190 Ala. 184, 190, 67 South. 407, Ann. Cas. 1917A, 721; Clover Creamery Co. v. Diehl, 183 Ala. 429, 430, 63 South. 196; Scoggins v. A. & G. P. C. Co., supra; Sheffield Co. v. Morton, 161 Ala. 153, 161, 49 South. 772; Scheuerman v. Scharfenberg, 163 Ala. 337, 339, 50 South. 335, 24 L. R. A. (N. S.) 369, 136 Am. St. Rep. 74, 19 Ann. Cas. 937; O'Brien v. Tatum, 84 Ala. 186, 188, 4 South. 158; Sioux City & Pac. R. Co. v. Stout, 17 Wall. 657, 661, 21 L. Ed. 745; Union Pac. Ry. Co. v. McDonald, 152 U. S. 262, 273, 14 Sup. Ct. 619, 38 L. Ed. 434; Lynch v. Nurdin (1841) 1 Adolph & Ellis (N. S.) 29; s. c., 1 Q. B. 29, 35, 36; Scott v. Shepherd (Squibb Case 1773) 2 Wm. Bl. 892.

Looking to the counts as last amended and as appropriate to such questions of law, it is averred, in substance: (1) That a dangerous well, spring, reservoir, or cistern filled with water "was, and had been for a long time prior" to the injury complained of, located on defendant's premises in the city of Birmingham; that it was not covered or guarded so as to prevent people from falling therein and was attractive to children, who frequently resorted thereto for the purpose of playing in and with the water therein contained; (2) that defendant well knew at the time of the grievance complained of that said well, spring, reservoir, or cistern and the premises on which same was located were frequented and daily used as a playground by children, and that children frequently resorted thereto for the aforesaid purpose of playing with or in the water contained therein, and said premises were used by the general public for various purposes, and that many people passed and repassed in dangerous proximity thereto; (3) that said premises and said well, spring, reservoir, or cistern were in an unsafe, dangerous condition, and that defendant knew it, or by the exercise of common judgment and prudence should have known it, and it became and was the duty of the defendant to place a cover upon or guard or protect said well, spring, reservoir, or cistern, so that persons might not fall therein. It is further averred that while plaintiff's intestate, a minor of the age of, "to wit, nine years and three months, was playing at or near said well or spring and with the water therein contained, he fell into said well or spring, and as a proximate consequence thereof he was drowned in the water therein contained." The several counts conclude with the averments that intestate's death was proximately caused by the negligent failure of the defendant to cover, guard, or protect said well, spring, reservoir, or cistern. Such are counts K, Z–1, and Z–2. The willful and wanton counts (Z–3 and Z–4) follow the averments of the respective simple negligence counts (Z–1 and Z–2) by the averment of wanton,

willful, or intentional conduct of the defendant in his failure or refusal to "cover up or protect said well [spring, reservoir, or cistern] after being warned that same was in a dangerous condition and that children resorted thereto to play * * * in and with the water therein contained."

Adverting to some of the recent cases by our court urged as having application, it is noted of A. G. S. R. Co. v. Crocker, supra, that the dangerous and attractive instrumentality causing the injury to the plaintiff was a "turntable kept by the defendant at its depot and yards in the city of Tuscaloosa"; that the child injured thereby (the plaintiff) was a trespasser. In Clover Creamery Co. v. Diehl, supra, the complaint approved averred that—

"Defendant had, at and before the time * * * [of the injury] on its premises * * * machinery that was attractive to children of plaintiff's age, and was exceedingly dangerous when left unguarded by fence, or in some other way [describing the machinery];" that defendant "negligently permitted said machinery * * * to be and remain * * * unguarded by an inclosure of some character, * * * although the defendant well knew that plaintiff, who was * * * below the age of discretion, * * * residing upon said premises, * * * was constantly playing about said premises in close proximity to said machinery," etc.

In Thompson v. Alex. City Cot. Mills Co., supra, the instrumentality in question was a ditch used by defendant for carrying off hot water from its boilers, and plaintiff's intestate, who met his death therein, was a bare licensee. The court said:

"In most of the reported cases, the injured child was a trespasser, and not a licensee, as in this case. In all the cases in which defendants have been held liable under this doctrine, whether the injured person was a trespasser or a licensee, it was shown that the defendant either had actual knowledge, or was chargeable with knowledge, both of the dangerous character of the particular premises or agency and of the fact that the same was attractive to children, and that they were in the habit of trespassing, or would form the habit, if licensees, of playing in, upon, or with the dangerous agency." 190 Ala. 190, 67 South. 409, Ann. Cas. 1917A, 721.

In the Sheffield Co. v. Morton Case the turntable doctrine was again discussed; the dangerous instrumentality causing the injury being a highly charged electric wire— a concealed, latent danger—which was not to be suspected by a child passing and injured thereby. The court said:

"Every theory of negligence works around to the question whether some one did or failed to do what a reasonably prudent and competent man would be expected to do under given circumstances. In determining what precautions were reasonably necessary and incumbent upon the defendant in the use of its prop-

erty at the place in question, it must be held to have considered the known extent and nature of the use to which the place was customarily put by others than its owner. In Railroad Co. v. Stout, 17 Wall. 657, 21 L. Ed. 745, commonly known as the first of the 'turntable cases,' Judge Dillon, presiding at the trial, * * * charged the jury in the following language: 'If the railroad company did not know, and had no good reason to suppose, that children would resort to the turntable to play, or *did not know, or had no good reason to suppose,* that if they resorted there there would be likely to get injured thereby, then you cannot find a verdict against them. But if the defendants did know, or had good reason to believe, under the circumstances of the case, that the children of the place would resort to the turntable to play, and that if they did they would or might be injured, then, if they took no means to keep the children away, and no means to prevent accidents, they would be guilty of negligence, and would be answerable for damages caused to children by such negligence.' That charge was held by the Supreme Court of the United States to be an impartial and intelligent statement of the law, and was quoted with approval in the later case of Union Pacific Railway Co. v. McDonald, 152 U. S. 262, 273, 14 Sup. Ct. 619, 38 L. Ed. 434."

In Athey v. T. C. I. & R. Co., supra, the agency causing the death of plaintiff's intestate was a drainage ditch extending through the several defendants' lands, in which flowed polluted water, "not dangerous to life except as a fluid in which one might drown," and plaintiff's intestate meeting her death by such means at such place was a child trespassing on the lands. The court declared:

"The question then is whether the municipal authorities were guilty of negligence in leaving this ditch, not in a public street or other place to which the public might resort as of common right, unguarded against the intrusions of small children. We think not. We suppose it will not be insisted that, apart from the conditions created by the very tender and wholly inexperienced years of this child, the city has been derelict in the exercise of common judgment and prudence. The ditch is no more a lure to children than a natural stream, involving the same danger, would be in the same place—not as much so. Its dangers, such as they are, to children at all able to take care of themselves, are such as may be found on every hand, are not concealed or disguised so as to create a pitfall, and common experience shows that a reasonable prudence may trust their avoidance to the universal instinct of self-preservation. * * * Plaintiff argues that some expressions used in Sheffield Co. v. Morton, 161 Ala. 153, 49 South. 772, conclude this appeal in his favor. We were there passing on the sufficiency of the complaint as against a demurrer interposed, and it seems there was considered to be an element of concealed danger in the case stated, something in the nature of a trap."

Mr. Thompson, in his Commentaries on the Law of Negligence (volume 1, p. 937 et seq.), announced generally that' owners and occu-piers of real property, in some respects, are held by the law to a different standard of liability in case of injuries to children coming upon such premises from that with respect to adult persons: (1) That toward children expressly or impliedly invited to come upon his premises the owner or occupier should take precautions to keep his premises safe, so that they will not be injured in so coming, and such is his duty toward adult persons; (2) that, as a general rule, he is not bound to keep his premises safe or in any particular condition for the benefit of trespassing children, or "for the benefit of children who occupy no more favorable position than that of bare licensees"; (3) and that there is a well-grounded exception to the foregoing principles that one who artificially brings or creates upon his premises any dangerous thing, which from its nature has a tendency "to attract the childish instincts of children to play with it, is bound as a mere matter of social duty to take such reasonable precautions as the circumstances admit of, to the end that they be protected from injury while so playing with it or coming in its vicinity" (sections 1024, 1030); (4) that although the dangerous thing which is suffered to exist unguarded on his premises, where children are accustomed to come with or without license, may not be an attractive nuisance—may not have an especial attraction for children by reason of their childish instincts—"yet where it is so left exposed that they are likely to come in contact with it, and where their coming in contact with it is obviously dangerous to them, the person so exposing the dangerous thing should reasonably anticipate the injury that is likely to happen to them from its being so exposed, and is bound to take reasonable pains to guard it so as to prevent injury to them" (sections 1030 et seq.). This text of Thompson's Negligence was cited with approval in Thompson v. Alex. City Cot. Mills Co., supra, 190 Ala. 191, 67 South. 407, Ann. Cas. 1917A, 721, as was also the statement of the rule from Street's Foundations of Legal Liability, vol. 1, pp. 160, 161, where the author says that—

"*Liability* in the turntable cases is frequently put upon the ground of implied invitation to children to come upon the premises in order to play there, the invitation being supposed to arise from the attractive nature of these dangerous engines. This hypothesis is hatched up to evade the obstacle which arises from the fact that the plaintiff is a trespasser. But it is as unnecessary as it is inadequate and artificial. Liability is to be ascribed to the simple fact that the defendant, in maintaining a dangerous agent from which harm may, under particular conditions, be expected to come, has the primary risk, and must answer in damages unless a counter assumption of risk can be imposed on those who go there to play."

Mr. Thompson (section 1031) says further of liability for injury to children that—

"The owner of any machine or *other thing* which, from its nature, is *especially attractive to children* (italics supplied), who are likely to attempt to play with it in obedience to their childish instincts, and yet which is especially dangerous to them, is under the duty of exercising reasonable care to the end of keeping it fastened, guarded, or protected so as to prevent them from injuring themselves while playing or coming in contact with it." Lynch v. Nurdin, supra (a standing wagon with animal hitched thereto); O'Malley v. St. Paul, etc., R. Co., 43 Minn. 289, 45 N. W. 440 (car wheels left standing on incline); Porter v. Anheuser-Busch Brew. Ass'n, 24 Mo. App. 1 (leaving a portable furnace on or near the sidewalk); Westerfield v. Levis Bros., 43 La. Ann. 63, 9 South. 52 (a dangerous machine); Coppner v. Pennsylvania Co., 12 Ill. App. 600 (a drawbridge); City of Pekin v. McMahon, 154 Ill. 141, 39 N. E. 484, 27 L. R. A. 206, 45 Am. St. Rep. 114 (a pit in city filled with water); Hydraulic Works Co. v. Orr, 83 Pa. 332 (a. platform by the side of the street); Price v. Atchison Water Co., 58 Kan. 551, 50 Pac. 450, 62 Am. Rep. 625 (deep reservoir of water); Birge v. Gardiner, 19 Conn. 507, 50 Am. Dec. 261 (a gate near a lane that was insecure); Brinkley Car Co. v. Cooper, 60 Ark. 545, 31 S. W. 154, 46 Am. St. Rep. 216 (pool of hot water); Mullaney v. Spence, 15 Abb. Prac. (N. S.) (N. Y.) 319 (sliding door to elevator left open).

"Such machines and *dangerous things* (italics supplied) are often described in the books as *attractive nuisances*. In the leading case promulgating this doctrine (Lynch v. Nurdin), the defendant's servant left his horse and cart unattended in a populous street. The plaintiff, a child seven years old, got upon the cart in play, and another child made the horse move on while the plaintiff was in the act of getting down from it, in consequence of which the plaintiff was thrown down and had his leg broken. The defendant was held liable in an action on the case, although the plaintiff was a trespasser, and contributed to the mischief by his own act. It was properly left to the jury to find whether defendant's servant was guilty of negligence, and, if so, whether that negligence caused the injury in question." Lynch v. Nurdin, supra.

"What an express invitation would be to an adult, the temptation of an attractive plaything is to a child of tender years." Keefe v. Milwaukee & St. P. Ry. Co., 21 Minn. 207, 211 (18 Am. Rep. 393); U. S. Y. & T. Co. v. Rourke, 10 Bradw. (10 Ill. App.) 474, 482; Townsend v. Wathen, 9 East. 277.

Other cases on the question, where the agencies causing the injuries are of a different character, are Mackey v. City of Vicksburg, 64 Miss. 777, 2 South. 178 (dangerous excavation); Branson's Adm'r v. Labrot, etc., 81 Ky. 638, 50 Am. Rep. 193 (lumber pile); Powers v. Harlow, 53 Mich. 507, 19 N. W. 257, 51 Am. Rep. 154 (dynamite cartridge); Whirley v. Whiteman, 1 Head (Tenn.) 610 (cogwheel in paper mill).

Though the rule of attractive nuisances is generally attributable to Lynch v. Nurdin, supra, it is, in fact, the result of the principle theretofore announced in Townsend v. Wathen, supra (1808), p. 281, where Lord Ellenborough, C. J., observed:

"Every man must be taken to contemplate the probable consequences of the act he does. And therefore when the defendant caused traps scented with the strongest meats to be placed so near to the plaintiff's house as to influence the instinct of those animals, and draw them irresistibly to their destruction, he must be considered as contemplating this probable consequence of his act. * * * What difference is there in reason between drawing the animal into the trap by means of his instinct, which he cannot resist, and putting him there by manual force?"

This rule of liability was extended to an injury to a child attracted by his instincts to his own hurt by the dangerous instrumentalities and agencies of another left unguarded, since there is no difference in reason between drawing the animal into the trap by means of its instinct, which it cannot resist, and drawing a child into such trap in gratification of his natural instinct of curiosity or of sport. The answer in Lynch v. Nurdin, supra, was that a child's life ranked "as high in the estimation of the law as that of a dog." Thompson's Commentaries on Law of Negligence, vol 1, § 1046, note p. 958.

[3] The reason of the rule of the cases regarding liability for injuries suffered by children on the premises of another where they are permitted to be by express or implied invitation or as mere licensees, or attracted thereto by their childish instincts, whether the agency or instrumentality of injury be an "attractive nuisance," a dangerous agency concealed from the observation of a child of tender years, or a trap or pitfall, is that the owner or occupier of such premises, erecting, permitting, or exposing the dangerous condition, thing, instrument, or agency so that children are likely to come in contact with it, and who he knows will be probably attracted by their instincts and come there, and their contact is obviously dangerous, under circumstances that the owner or occupier of the premises should reasonably anticipate the injury likely to happen to children coming in contact with such agency or instrumentality, is in duty bound to take reasonable care or precaution to guard it so as to prevent such injury.

[4-6] The amended counts K, Z-1, and Z-2 were insufficient as declarations for an attractive nuisance—the existence on defendant's land of well or spring was not averred to be of artificial construction, but, from the facts averred (construing the pleading most strongly against the pleader), may be inferred to be a natural reservoir, fountain, or source of water supply that had existed on said land a long time prior to the injury of which complaint is made—if not otherwise defective. Nor were the counts sufficient as counting for a trap or pitfall. Counts Z,

Z–3, and Z–4 were insufficient, as the facts of the quo modo of the injury averred did not support the conclusion of the pleader as willful or wanton counts. Jackson v. Vaughn post. 543, 86 South. 469.

The judgment of the circuit court is affirmed.

ANDERSON, C. J., and McCLELLAN and SOMERVILLE, JJ., concur.