BYRD v. J. F. MEEKS LUMBER CO., Inc.*
No. 1370.

Court of Appeal of Louisiana.
First Circuit.
June 30, 1934.

Fred G. Benton, of Baton Rouge, for appellant.

Jos. A. Loret, of Baton Rouge, for appellee.

MOUTON, Judge.

The exception of no cause or right of action was properly overruled.

Merits.

Plaintiff, Mrs. Byrd, offered Mr. Fred Tolle, through his wife, to sell him two lots of ground near the city of Baton Rouge to build a home, if Tolle could find any one to furnish lumber to erect the dwelling.

The understanding between them was that if he found a party willing to advance the materials, she would sell him the two lots and that the furnisher of the materials would have a first mortgage on the lots to secure their payment and that she would have a second mortgage to secure the price of purchase for the two lots.

The defendant company, through Mr. Harold Meeks, having agreed to furnish the building materials, plaintiff sold the two lots to Mr. Tolle. It was understood that the materials furnished would not exceed the sum of $600. The lots were conveyed by plaintiff to Mr. Tolle for $1,250.

In accordance with the agreement, two acts of mortgage given on the property were drawn up, one for $600 in favor of defendant company, and one for $1,250 in favor of plaintiff, Mrs. McGehee.

The act of sale by plaintiff to Mr. Tolle and the mortgage by the latter to plaintiff were executed before Mr. Roland Kiser, an attorney of Baton Rouge, and notary public, on October 30, 1930. The mortgage for $600 to defendant company, given by Mr. Tolle for the materials to be furnished, was also executed by Mr. Kiser, as notary, on June 1, 1931.

The sale to Mr. Tolle was recorded June 8, 1931; the two acts of mortgage were recorded June 11, 1931; and, as per agreement, the act for $600 to defendant company was recorded as the first mortgage and the other, in favor of plaintiff, for $1,250 as second mortgage.

It will be noted that the two acts of mortgage were recorded several months after the lots had been deeded to Mr. Tolle and so was the sale to him by Mrs. Byrd. This delay in recording the acts of mortgage was due to the request of Mrs. Byrd because she did not want the acts registered before all the lumber or materials had been delivered by defendant company, and also to the fact that some disagreement occurred between Mr. Tolle and defendant company in reference to the quality of lumber furnished. The parties in thus delaying the registry of these acts were acting, however, in a perfectly friendly spirit and without the least desire, as far as the record shows, by either of them to take advantage of the other. On the contrary, the intention of the parties seems to have been that each might get what was

*Rehearing granted Oct. 3, 1934.

coming to him in the transaction, as the agreement had been evidently entered into to afford an opportunity to Mr. Tolle of acquiring a home on a small installment plan, to the defendant company to obtain security for the lumber to be furnished and to Mrs. Byrd, plaintiff, to secure a sale of her two lots of ground.

It happened, however, that during the time these acts were withheld from recordation, as per the agreement, Mr. Ferguson, of Shreveport, instituted suit on a claim against Mr. Tolle, and obtained a judgment against him by default, which was recorded prior to the recordation of the two acts of mortgage and, as a consequence, took precedence over these acts, as a judicial mortgage. Mr. Tolle did not inform either Mrs. Byrd or defendant company of the suit which had been filed against him, nor of the judgment rendered thereon.

Mr. Tolle having failed in his payments, the defendant took out executory proceedings to have the building and the two lots of ground sold at public sale. Mr. Roland Kiser was then employed by defendant company as its attorney to represent it in these proceedings.

Mr. Kiser tells us in his testimony about a conversation he had in his office in the presence of Mr. Byrd, husband of plaintiff, and of Mr. Harold Meeks, agent of defendant and of Mr. Tolle. At that conference, Mr. Kiser says, he suggested that the records be run over to see if Mrs. Byrd had not perhaps sold the property. Tolle answered, it was not necessary, and upon being asked if judgment had not been gotten against him, answered, "I am just as clear as a whistle." Mr. Byrd then said, Mr. Kiser testifies: "No, it is not necessary to do that, because this is, as I said, a good-will proposition. There is no money passing and we are just risking him for the whole thing any way, and it is all right like it is." Mr. Harold Meeks, representative of defendant company, said nothing to show his disapproval in any way of the remarks by Mr. Byrd which indicated the spirit in which the transaction was considered by the parties.

It was on the morning of the day fixed for the sale of the property under executory process that Mr. Kiser discovered, on examination of the records, that the judgment against Mr. Tolle had been recorded.

He says he then suggested to Mr. Byrd, to use his own language, "not to hold the sale this morning and to see if we could not buy that judgment or get rid of it some way."

At that time, it must be observed, Mr. Kiser was representing the defendant company and, as a matter of fact, had been instructed to bid at the sale for defendant.

It will also be noted that in his suggestion for the postponement of the sale, the word "we," meaning for plaintiff, Mrs. Byrd, and defendant company, was used by Mr. Kiser. This expression of Mr. Kiser is in keeping with what Mr. Byrd had previously said in reference to the transaction as being "a good-will proposition," above quoted, in the conference in Mr. Kiser's office, where Mr. Harold Meeks was present.

After the sale was postponed and re-advertised, Mr. Kiser says that with Mr. Byrd he got in touch with Mr. Tolle in reference to bankruptcy proceedings in which Mr. Tolle thought, erroneously, that he had obtained his discharge. There again Mr. Kiser acted in conjunction with Mr. Byrd.

Thereafter, Mr. Kiser, acting for defendant company, bought the judgment against Mr. Tolle for $150, being one-half of its amount.

Mr. Kiser says that after he had bought the judgment, he told Mr. Byrd that he could have title to the property if he would pay $150, that defendant company had paid for the judgment and the amount of its first mortgage on the property. He says this offer was declined by Mrs. Byrd.

The proposition to Mrs. Byrd shows, however, that Mr. Kiser considered that the purchase of the judgment had been made for her benefit also, if she desired to accept the offer tendered by defendant company.

If there can be any doubt that the defendant company took account of the interest Mrs. Byrd might have had in the extinguishment of the judicial mortgage which had taken precedence over her mortgage and that of defendant, such doubt must disappear in the light of the testimony of Mr. Kiser in reference to what he had in view, when, as the representative of defendant company, the property was bid in by him for the defendant at the public sale.

We have reference to a question propounded to Mr. Kiser, as to whether he had purchased the judgment for the account of defendant company. To this question, Mr. Kiser answered, as follows:

"Actually I did not purchase that judgment truly for the account of the Meeks Lumber Company, it was purchased for Mr. Byrd or Mrs. Byrd and the Meeks Lumber Company."

Counsel for plaintiff relies on the case of Jansen v. Bellamore, 147 La. 900, 86 So. 324, 328.

In that case, a jeweler had subleased the ground floor of a building to an optician, the parties intending by that arrangement to reduce their rents by letting the upper floor. The optician obtained a renewal of the lease from the lessor for himself by which he sought to squeeze the jeweler out of the benefit which had been intended for him also under their agreement. The court held that the new lease so obtained belonged to both parties. This ruling was made on an issue involving the rights of parties under a contract of lease. In that respect this case and the one cited are not similar.

In referring to the cases in chancery courts where the right of renewal attaches to leasehold estates, the court had this to say:

"The rule is not confined to any particular class of contracts or undertakings, but applies with equal force in every case where there exists a relationship of trust between the parties, requiring the exercise of mutual good faith and fair dealing, though it finds most frequent application among partners, attorneys and clients, tutors and wards, principals and agents, etc."

It will be observed that the court said, in the above quotation, that the rule was not confined to any particular contract or undertaking, but that it "applies with equal force in every case where there exists a relationship of trust between the parties, requiring the exercise of mutual good faith and fair dealing."

In emphasizing this view of the case, the court said:

"This rule of fair dealing was as effectually written into their agreement by the law as if it had been specifically stipulated."

As Mr. Kiser said that the judgment had been bought "for Mr. Byrd or Mrs. Byrd and the Meeks Lumber Company," if we are to apply that rule of "fair dealing," where the relationship of trust exists between the parties, the offer made to Mrs. Byrd to clear the title should not have been that she should pay $150 for the judgment defendant had acquired for that sum. A fair and just proposition would have been that she should pay $75, her one-half of the judgment, which Mr. Kiser testifies had been bought for the joint benefit of Mrs. Byrd and defendant company. It may be that with the offer that she should pay $75, instead of $150, it would have been accepted by Mrs.

Byrd. This is said, because Mr. Kiser, in referring to the purchase of the judgment, said that defendant company "was the only one who could put up the money," meaning the $150.

In this case, if Mrs. Byrd had not agreed to convey the lots to Mr. Tolle on the installment plan, Mr. Tolle could not have purchased the lot and defendant company could not have sold the materials to be secured by the first mortgage on the property. There can be no doubt, from the relationship that existed between the parties from the inception of the transaction, that the purpose of the agreement was to secure a home for Mr. Tolle, to secure the payment of the lumber defendant company was to sell him and to allow Mrs. Byrd an opportunity of selling her two lots of ground.

It is true that neither defendant company, nor Mrs. Byrd, guaranteed that the other would get payment of the amount due under their respective mortgages, but it is certain that neither of these mortgagees thought for a moment that either would acquire the property to the detriment of the rights of the other.

The relation of trust between them, using the language in Jansen v. Bellamore, 147 La. 900, 86 So. 324, required "the exercise of mutual good faith and fair dealing."

This rule of equity, as was said in that case, was as effectually written into the agreement by the parties herein as if it had been specifically stipulated. This rule was simply an implied obligation written in their contracts and which did not have the effect of varying, explaining, or contradicting any stipulations of these contracts. Under this rule of fair dealing, it was expected, however, that defendant company would be paid first, on the mortgage it held against the property, and after its payment, that the residue would be applied to Mrs. Byrd's second mortgage.

Equity, says article 1965, Civil Code, is founded, "on the moral maxim of the law that no one ought to enrich himself at the expense of another."

The intention of the parties, as heretofore explained, was that defendant company would be paid first on its mortgage and secondarily Mrs. Byrd, on her mortgage. The deed of the sheriff to defendant company for the property shows that defendant paid $710, which was in satisfaction of its claim amounting to $642, and costs, in the sum of $67.05. Defendant company was entitled to that amount under its mortgage and for

cost of sale, paid. Defendant paid also $150 for the judgment, thus clearing the property of this first incumbrance which had resulted from the failure of Mr. Tolle to notify his mortgagees that he had been sued for an amount for which the judgment was rendered. The situation thus created to the detriment of both plaintiff and defendant was not due to the fault or negligence of either.

Mr. Kiser said that he had bought the judgment for the benefit of plaintiff and defendant.

The defendant in paying $150 paid plaintiff's half of the judgment, and is therefore entitled to $150 for having cleared the property of this first incumbrance for the benefit of both parties.

This sum of $150, added to the sum of $710, entitles defendant to a total of $860.

The property, Mr. Harold Meeks testifies, was sold to Mr. Kleinpeter for $1,300, a sum of $440 in excess of the sum of $860, the amount defendant was entitled to recover, as hereinabove stated in this opinion.

There is no evidence to show, or any circumstance to indicate, that defendant company could have obtained a larger sum for the property than was paid for it by Kleinpeter.

Under the rule of equity, which we hold should govern in this case, defendant company is entitled to $860, but beyond that amount, if it were permitted to recover, the defendant would be enriching itself at the expense of plaintiff whose sale of the lots afforded the opportunity to defendant of disposing of its lumber and of securing its payment by the mortgage given it by Tolle on the lots bought by him. On the other hand, under the same equitable principle, plaintiff is entitled to the residue of the price for which the property was sold to Kleinpeter, after deducting therefrom the amount defendant had the right to receive on its mortgage, the cost of sale, and $150 it had to disburse to clear the property of its incumbrance, under the judicial mortgage resulting from the registry of the Ferguson judgment.

Plaintiff is therefore not entitled to recover against defendant the sum of $1,250, the price of sale appearing on the deed of defendant to Kleinpeter, because if plaintiff should be allowed to obtain that amount, she would be enriching herself at the expense of defendant, and in violation of the understanding of the parties in the transaction in question.

The judgment rejecting the demand of the plaintiff will therefore be reversed, and a decree will be entered in her favor according to the views above expressed.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be avoided, annulled, and reversed; and it is further ordered and decreed that plaintiff have judgment against defendant company for the sum of $440, with legal interest from judicial demand and that defendant pay all cost of court.