E. L. BRUCE Co. *et al. v.* BROGAN.

(Division B. Feb. 24, 1936. Suggestion of Error Overruled, April 6, 1936.)

[166 So. 350. No. 32113.]

Welch & Cooper, of Laurel, for appellants.

F. B. Collins, of Laurel, for appellee.

Currie & Currie, of Hattiesburg, for appellee.

Argued orally by **Ellis B. Cooper,** for appellant, and **Neill T. Currie,** for appellee.

**Griffith, J.,** delivered the opinion of the court.

Appellant operates a large sawmill for the manufacture of hardwood lumber. In this operation appellant uses many mules. Appellee was employed by appellant as a mill blacksmith and horseshoer; it being the duty of appellee to keep all the mules properly shod. In attempting to shoe one of the mules, appellee was kicked by the animal and was severely and permanently injured.

There was sufficient testimony to support the following findings of fact by the jury: The offending animal was one of two mules which had been purchased and put upon the work about two months before the injury. Both these mules were wild, ungovernable, and more than ordinarily dangerous to those required to shoe them, and this fact was known to the general manager of appellant company. About a month before the injury, appellee went to the general manager and stated to him, in effect, that these two mules were too dangerous to be shod with reasonable safety without the use of a device known as a brace or brake, and, in a few days, appellee's helper went to the manager and made a statement to the like effect. The truth of these statements to the general manager is borne out by the testimony of appellee and others to the effect that it was not reasonably safe to shoe these two dangerous mules either by throwing them or by the use of a side line, and that this work could not safely be done except by the use of a brake or brace, which is a device somewhat like a stall and which is equipped also with leather straps and a windlass. This device is comparatively simple in construction and can be erected by two men in one day and at a cost in materials of about fifteen dollars. Such a device was in use at some of the other mills in the vicinity, but was not in general use throughout the country. This latter fact is of no help in the case, however, because there is no proof whether dangerous mules are generally employed, that is to say, at mills where these braces or brakes are not used.

When the matter was mentioned to the general manager by appellee, the manager made no response; but, when appellee's helper later went to the manager about it, the manager responded: "There is plenty of lumber down there and you can build a bathtub and give them a bath if you want to." This response was communicated to appellee by his said helper; and others in

authority at the mill also stated to appellee and his helper that they could have anything on the millyard or thereabout which they might want to construct any sort of safety device desired. The permission to appellee and his helper was ample, but they did not avail of the permission, did not construct the brake or brace, and thereafter, in attempting to shoe one of these two mules without the use of any safety device, appellee was injured as stated.

Appellant has presented a persuasive argument that the employment of shoeing mules is inherently and unavoidably a dangerous business, and that a person who undertakes that employment assumes the risk of being kicked. And appellant calls attention to the fact that, although mules have been shod in instances beyond number, and for years upon years, no case can be found among all the reported decisions wherein any person has ever claimed compensation by way of damages for the kick of a mule while being shod. If this were a case, as ordinarily, where the blacksmith has his own business and his own shop and furnishes his own equipment, or if it were a case where the animal was not known to the master to be extraordinarily dangerous, the argument made by appellant would be well taken, of course.

But this case, as we see it, falls within the established principle that, the greater the known danger, the greater is the degree of care which must be taken by the master to furnish the instrumentalities which will render the doing of the work reasonably safe; and, since there is sufficient testimony to support the finding of the jury that a device such as mentioned is the only reasonably safe means or method to be used in shoeing extraordinarily dangerous mules, and since these two mules were of that character to the previous knowledge of the master, it follows that it was the duty of the master to furnish the said device.

The close point in the case is upon the question whether

the conversations or negotiations between the master and the servant in regard to the safety device did, or did not, relieve the master and place that responsibility upon the servant. While it is true, as a general rule, that the master may not delegate the duty to use reasonable care to furnish reasonably safe appliances for the particular work to be done, it is also true that the master may delegate to the servant the erection or construction of the appropriate safety appliances, when the servant is furnished the necessary materials by the master. And, when the delegation has been accepted by the servant, and the necessary materials have been furnished by the master, any failure by the servant to construct the appliance or to construct it properly cannot be charged against the master, because then the proximate cause is not the negligence of the master but solely that of the servant. 39 C. J., pp. 324-326, and cases cited in the notes; and see Edward Hines Lumber Co. v. Dickinson, 155 Miss. 674, 681, 125 So. 93.

But there are two difficulties as obstacles against the application of that principle in this case. First, the master did not offer to furnish anything for the making of the brake except lumber and other things on the yard or around the mill, while the evidence shows that leather straps and a windlass were also necessary. But, leaving aside that feature, the evidence is not sufficient to show that the delegation was accepted by the servant. In such a case there must be enough to disclose that the servant has contracted to construct the safety appliance, or at least enough that the jury may safely say out of all the facts and circumstances in the case, Hegwood v. J. J. Newman Lumber Co., 132 Miss. 487, 96 So. 695, that such was the mutual understanding between the master and servant, and the burden to show this is upon the master.

The negotiations must have passed beyond the per-

missive stage, that is to say, beyond the state where the master has merely given permission to the servant; and here, we believe, there was not sufficient in the present case to justify the jury in concluding that the negotiations in respect to the construction of the brake had ever reached that point where it could be dependably said that there was an acceptance by the servant or a mutual understanding that the servant would and should construct the safety appliance mentioned. There is enough here that the master may have so understood, but not enough that it was mutual; that is to say, that the servant also understood, or ought to have so understood, it. In applying the principle now being discussed, the understanding ought to be more than that which is left to supposition or assumption; it ought to be dependably definite either by express agreement or by a substantial equivalent thereof and which may be safely worked out of the definite implications of all the circumstances, as was done, for instance, in the Hegwood case, supra.

The declaration alleged that the general manager, Harris, ordered appellee on the occasion in question to shoe the mule in the manner in which it was attempted to be done, and the manager was accordingly joined as a defendant. The proof fails to show this alleged fact. Appellant Harris briefly mentions that the judgment should therefore be reversed as to him, since any fault on his part was one of omission only. No argument or authorities are submitted in support of this position. There is a want of harmony among the cases upon this particular subject (18 R. C. L., p. 780), and, the question being important, we ought to, and must, decline to decide it unless fully argued by appellant with citation of authorities (Johnson v. State, 154 Miss. 512, 122 So. 529; Goodyear Yellow Pine Co. v. Lumpkin, 158 Miss. 578, 130 So. 745), and in such a way as to provoke more than a passing response by the other side. No response was made by appellee to the point, and we must assume

that appellee in not responding relied upon the rule that a point not argued in the briefs by appellant may be taken as waived. Bridges v. State, 154 Miss. 489, 122 So. 533; Rayl v. Thurman, 156 Miss. 8, 125 So. 912.

Affirmed.