## Edwards *v.* Peresich, et al.

No. 39299 October 18, 1954 74 So. 2d 844

*Amy Burkett,* Ocean Springs, for appellant.

*O. K. Wiesenburg,* Pascagoula, for appellees.

APPELLANT IN REPLY.

ETHRIDGE, J.

Appellees, Giles H. Peresich and others, have moved to strike the court reporter's transcript and to dismiss this appeal, on the ground that notice to the court reporter was not given within ten days after the adjournment of court following rendition of the final decree, as required by Code of 1942, Sec. 1640, and for the reason that the appeal was not taken within six months after the rendition of the final decree of September 25, 1952, as required by Code Sec. 753. The issue involved is whether the filing of a petition for rehearing during the term of chancery court at which the final decree was rendered, and the continuance by the court of such petition for rehearing to vacation or the next term, suspend these statutes of limitation until the court has executed an order overruling the petition for rehearing.

The case was tried at the September 1952 term of the Chancery Court of Jackson County. The final decree was executed and filed on September 25, 1952, adjudicating title to the lands in the defendants and cross-complainants, who are appellees and movants here. On the last day of that term of court, October 3, 1952, complainants and cross-defendants, appellants here, filed what they designated a "motion for a new trial." This pleading moved the court to set aside the decree and to

grant a new trial, and assigned seven reasons therefor, including that the decree was contrary to the pleadings and the evidence, that the description of the property in the decree was at variance with the description claimed by cross-complainants, that the court erred in excluding certain evidence offered by complainants and cross-defendants, and that the court erred in refusing to grant complainant and cross-defendant time to obtain a survey to rebut evidence offered by defendants and cross-complainants showing a description of the property at variance with the description claimed by the latter parties. It will be noted that this "motion for a new trial" did not set up any newly discovered evidence or assert any fraud in the obtaining of the decree, but was directed solely to matters already in the record, except as to the last item.

On the same day, October 3, which was the last day of that term of court, the chancellor signed an order, adjudicating that the cause had come on to be heard on that motion, and that it appeared that the attorney for defendants and cross-complainants had not been served with a copy of the motion and could not be contacted, and that it was therefore ordered that "said cause be continued for hearing upon said motion for a new trial to such time and place in term time or vacation as may be convenient to counsel for the respective parties and the court." The attorney for defendants was served with a copy of this motion on the next day, October 4, and on October 7 the attorney for defendants, appellees and movants here, wrote complainant's attorney that he would appear before the chancellor at 10 o'clock on the next Saturday to urge him to overrule this motion, and that he would not agree to let it go over until December. On the next Saturday, October 11, attorneys for both sides appeared before the chancellor, but because of other business, the chancellor was not able to then consider the motion. On October 21, defendants' attorney

·wrote the chancellor, and advised him that, after studying the authorities, he did not think that this motion was a proper pleading, and that he would like the record to show that he would not consent to any hearing of it, for the reason that the court was without jurisdiction to consider it. On October 29, in vacation, the chancellor executed a decree overruling complainant's "motion for a new trial." It recited that defendants had refused to appear or participate in a hearing on the motion, and that defendants took exception to the court's decree·overruling it.

Complainants and cross-defendants, appellants here, thereafter gave notice to the court reporter to transcribe his notes on October 30, 1952, which was twenty-six days after the adjournment of the September term, and one day after the decree of October 29 overruling the motion for "new trial." On April 25, 1953, complainants and cross-defendants filed an appeal bond. This was seven months after the rendition of the final decree of September 25, 1952, and about four days less than six months after the date of the decree of October 29, 1952, which overruled complainant's motion for a "new trial."

On this motion to strike the reporter's transcript and to dismiss the appeal, movants, appellees, contend that the 10-day limitation period for notice to the court reporter and the six-months limitation period for filing the appeal bond were not suspended by the filing of the petition for rehearing. Movants concede that a petition for rehearing is a permissible practice in chancery courts, but they first say that the so-called "motion for a new trial" did not comply with the requirements for a petition for rehearing, since it was neither supported by affidavit nor by a verified petition for rehearing.

Griffith, Mississippi Chancery Practice (2d ed. 1950), Sec. 632, states: "Until the final adjournment of the term at which a final decree has been entered, the court has entire control of all its orders and decrees and may

modify or vacate any one or all of them either on its own motion or on the motion or petition of any party thereto. Ordinarily, when a court of its own motion during term time alters or vacates an order or decree, the action of the court in doing so is based on matters already a part of the record in the cause. It follows, therefore, that it is not necessary to file any formal motion or petition for a rehearing during term, if a party to the cause desires to bring to the attention of the court, for instance, some matter of evidence already in the record, . . . ''

 The motion filed in the chancery court, although incorrectly designated as a motion for a new trial, is the substantial equivalent of a petition for rehearing in equity. Moreover, it was based on matters already a part of the record, with one exception, and it was not necessary, although desirable, that such petition be sworn to by the attorney for complainant making such motion. There is no statute or rule of court in this State concerning the form of a petition for rehearing in equity. 30 C. J. S. 1036, Equity, Sec. 628.

Movants further argue that a petition for rehearing must be disposed of at the same term at which the final decree is rendered. Code of 1942, Sec. 1228, as amended, provides in part: ''A chancellor may deliver opinions and make and sign decrees in vacation in causes taken under advisement by him at a term of court; and by consent of the parties or of their solicitors of record, he may try causes and deliver opinions and make and sign decrees therein in vacation; . . .'' Discussing this statute, Griffith, Mississippi Chancery Practice, Sec. 594, p. 629, says: ''If the chancellor desires further time to consider of the case, or to further study the authorities, or the opportunity to have the notes of the testimony read to him on close questions of fact he may take the case under advisement, being particular to retain jurisdiction of it by the necessary order on the minutes to that effect; and having so ordered he may deliver his

opinion and sign the decree or any appropriate orders or decrees therein during vacation, . . ."

The decree of October 3, the last day of the term of court, was a proper exercise of the court's power under Code Sec. 1228 to take the petition under advisement to determine whether it was sufficient to entitle appellant to a rehearing. In fact, the chancellor was entirely correct in doing so, because the attorney for defendants had not then received notice of it. The decree in question simply overruled the petition. 30 C. J. S. 1028, 1029, 1033, Equity, Sec. 625.

██ Hoggatts v. Hunt, Walker (1 Miss.) 216 (1826), states that whether to grant a rehearing is in the sound discretion of the chancellor. In Planters Bank v. Neely, 7 How. (8 Miss.) 80, 95 (1843), a petition for rehearing was filed at the next term of court following the term at which the final decree was enrolled. The Court said: "As a general rule a rehearing cannot be granted after the term has passed in which the decree was pronounced. A bill of review is then the only remedy." However, this statement is explained in the later case of Foy v. Foy, 25 Miss. 207. There also the petition for rehearing was filed at the next term following the term at which the decree was entered. The Court said: "Neither can this bill be sustained as a petition for a rehearing. Petitions for rehearing can never be filed after the enrolment of the decree. 3 Daniel, Ch. Prac. 1620. Such was the rule of practice in England. But by a rule of court in this State, the petition for rehearing must be presented within five days after the decree pronounced. Under any circumstances, it is too late to apply for a rehearing after the expiration of the term of the court." In other words, the petition for rehearing under the general rule must be filed during the term of court at which the decree is rendered. 30 C. J. S. 1036. Compare Randell v. Yates, 48 Miss. 685 (1873); Handy v. Andrews, 52 Miss. 626, 633 (1876). ██ Since a petition for rehearing can be

filed before the end of the term at which the decree was rendered, and the chancellor has power to consider it, we think that if he does not have opportunity to properly evaluate it during that term, he has power under the authorities referred to above to continue the petition for consideration, either in vacation or at the next term, which was done here. 19 Am. Jur., Equity, Sec. 417.

Appellees contend that the filing of the petition does not suspend the limitation statutes with reference to giving of notice to the reporter and the filing of an appeal bond. There are no statutory provisions dealing with this question in equity. In the circuit court the filing of a motion for a new trial, before the adjournment of a term, suspends the running of the statutes of limitations, both as to the giving of notice to the reporter and the filing of an appeal bond, until the motion for a new trial is overruled. These periods are then computed from the date of the entry of the order overruling the motion for new trial. Shaw v. Bulah Cannon Shop, Inc., 205 Miss. 458, 38 So. 2d 916 (1948); Redmond v. Hilliard, 190 Miss. 839, 200 So. 130 (1940); Johnson v. Miss. Power Company, 189 Miss. 67, 196 So. 642 (1940). Code Sections 1536 and 1537 expressly provide for motions for new trial in circuit courts, but they make no reference to their effect on these limitation statutes. Code Sec. 1649 continues until the next term all proceedings undisposed of at the end of a term. The court, by reading these statutes together, has held that a motion for new trial in circuit court suspends these limitation statutes for appeals until the motion is overruled. O'Bannon v. Greenville Commercial Body Co., 159 Miss. 68, 132 So. 87 (1931).

We think that the rule in circuit courts on motions for new trial should, in reason and justice, be applicable to petitions for rehearing in chancery courts. This result is in accord with the statutes and authorities, and is consistent with the general rule, as set forth in 3 Am.

Jur., Appeal and Error, Sec. 435, and 1953 Supplement, which states: "Where the statute provides in general terms that the appeal or proceedings in error shall be instituted within a certain time from the rendition or entry of the judgment or decree, it is the general rule that where a motion for a new trial or rehearing is seasonably made, the time is to be computed from the date of the denial of the motion, and not from the date of the rendition or entry of the judgment or decree, where the motion was necessary to the consideration in the appellate court of the questions involved. The reason for this rule is that the character of finality does not attach to the judgment or decree until the motion has been decided." See also Anno., 10 A. L. R. 2d 1075, 1079; compare Burton v. Redmond, 71 So. 2d 772, (Miss. 1954).

For these reasons the motion to strike the court reporter's transcript and to dismiss the appeal is overruled.

### ON THE MERITS

The bill of complaint of appellant, Mrs. Emelia H. Edwards, was filed in the Chancery Court of Jackson County against Mrs. Beatrice Bisso Peresich and husband, appellees, to remove clouds on appellant's alleged title to a strip of land in the City of Ocean Springs, on the northeast corner of the intersection of Beach Road and Martin Avenue, fronting on Beach Road for 73.3 feet and with a depth north and south of slightly over 300 feet. The bill also sought an injunction to require defendants to remove a fence erected by defendants on the east side of that lot between it and appellant's property immediately to the east. Complainants claim both by record title and by adverse possession. Appellees, defendants, denied appellant's record title and adverse possessory claim, and by a cross bill against appellant, asserted record and adverse possessory title in appellees. The final decree of the chancery court dismissed appellant's bill with prejudice, and adjudicated title to the

disputed lot in appellees on their cross bill. There was a considerable amount of testimony and documentary evidence introduced, and no purpose will be served by reviewing here all of this evidence. After a careful consideration of the record, we have concluded that the decree is manifestly correct and should be affirmed, with a modification hereinafter noted.

Appellees relied principally upon three surveys, one made by Ramsay in 1910, one in 1934 by Ferguson, and one made in 1946 by Collins. Appellant's principal point is based on the assumption that the range or township line is in fact about 100 feet west of where these surveys place it, but appellant failed to offer any substantial evidence which would impeach their accuracy. Appellant relies primarily upon a survey allegedly made in 1872 by Boudousquie, which attempted to divide the Austin property, the common source of title, into lots. Appellant's record title is based upon deed references to those lots. However, this 1872 survey on this record is inadequate to support appellant's claim of record title since the sketch of it in the record does not show any starting point for the measurements therein, and does not adequately identify appellant's property with reference to the disputed lots. And it is also inadequate to impeach the surveys relied upon by appellees and found by the trial court to control. The deeds in appellees' chain of title contain a description which is rather unusual but which is sufficient to permit the location and identification of the lot in question. Appellees established a record title to the lot.

On the issue of adverse possession, it appears that the parents of appellee, Mrs. Peresich, Mr. and Mrs. A. L. Bisso, purchased in 1921, in addition to the lot in question, a home on the lot immediately to the north of the disputed tract, which lot also adjoined Martin Avenue, and that although the disputed tract contains no improvements, the Bissos and appellees subsequently have used

it as their property facing the beach and have always claimed it as their own. Their predecessor in title, Behrens, bought the disputed tract and the lot to the north by deeds containing adequate descriptions in 1910, and in 1911 he brought a suit to confirm title against all persons claiming any interest therein. Process by publication was had and a final decree of 1911 was made adjudicating title in Behrens, appellees' predecessor in title. No personal process was had in this case. In 1910 Ramsay made a survey of this land, which was recorded in that year, describing the same by metes and bounds. All of these recorded instruments, particularly of course the deeds in appellees' chain of title, constituted a color of title to support appellees' claim to and use of the disputed land.

The Ramsay survey of 1910 reflected the existence of a fence on the east side of the lot in question, immediately to the west of appellant's house and property. And the Ferguson survey of 1934, which was made for appellant's husband, now deceased, as well as the Collins survey of 1946, also reflected a dividing "old fence line." In 1934 appellant and her husband executed a deed of trust on their 90 foot front lot to the east of the disputed lot, describing the same in accord with the Ferguson survey. And the deed to appellant from her children, the other four heirs of her husband, also describes her lot in accord with the Ferguson survey and excludes the disputed tract. The testimony of appellant and appellees is in conflict on the question of adverse possession. On appellant's property is the French Hotel. For many years appellees and their predecessors, the Bissos, permitted Mr. and Mrs. Edwards and their guests to use an old pathway or road across the lot to get to Martin Avenue, because until 1929 there was no sea wall to the south and the entrance to appellant's hotel from the south was not too convenient. However, the great weight of the evidence indicates that this use of the disputed tract by

appellant and her husband was permissive in nature, and that appellant recognized that fact. This is shown almost conclusively by a letter which appellant wrote Mrs. Bisso in 1943, asking if she could buy the lot in question from Mrs. Bisso, and stating that if Mrs. Bisso did not want to sell now, appellant would like to buy it when Mrs. Bisso was willing to sell it; that appellant was not worried about who would use the lot while the Bissos were neighbors, but that she would hate to see anyone else build upon it. The letter further stated, ''I keep the lot clean as I always did and everything is looking pretty.'' This is a clear recognition by appellant, at a time when no issue had arisen as to the lot, that she had used it with the permission of the Bissos, that she recognized the title of the Bissos, and that she had kept the lot cleaned off for them during that part of the year when the Bissos were absent. All of these circumstances constitute ample evidence to support the finding of the trial court that appellant had no title by adverse possession, and that whatever use she made of it was permissive in nature.

Furthermore, it is undisputed that appellant owns, and is now using, the 90 foot front lot immediately to the east of the disputed tract. The effect of her suit is that she is claiming more than her deeds reflect she is entitled to. For all of these reasons, we think that the decree of the chancery court adjudicating both record and adverse possessory title to the lot in question in appellees is supported by the great weight of the evidence.

Nor can we say that the chancellor abused his discretion in refusing appellant's request to remand the case to the docket for several days in order that appellant might obtain an additional survey with particular reference to locating the range or township line. However, there is one error in the final decree which must be corrected. In the southeast corner of the lot in question and in the southwest corner of appellant's lot to the east

is a paved driveway leading from Beach Road to appellant's hotel. The Collins survey reflects that this driveway encroaches upon appellees' 73.3 foot front lot for a short distance in a triangular shape in the southeast corner of that lot. During the trial of the case appellees' attorney disclaimed for appellees any part of the driveway, and stipulated that if appellees obtained a decree, it would "exclude Mrs. Edwards' driveway." However, the final decree, in describing the boundaries of the lot, the title to which is confirmed in appellees, states: "excepting therefrom a limited easement to the existing driveway east of the existing fence line on the East side of the property herein described and being in the extreme southeast corner thereof, said limited easement being personal to Mrs. Emelia H. Edwards, and not being a covenant running with the fee." That holding is inconsistent with appellees' disclaimer and with the evidence indicating the long continued, prescriptive use by appellant of this driveway. The final decree of September 25, 1952, will be affirmed with this modification: The quoted exception in the decree is eliminated and in its place the decree will recite as follows: "excepting therefrom an easement appurtenant to and running with the title to the property immediately to the east now owned by Mrs. Emelia H. Edwards, being an easement in the existing driveway in the southeast corner of the above described lot of cross-complainants." All costs will be assessed against appellant.

Motion to strike court reporter's transcript and to dismiss appeal overruled. On the merits, affirmed as modified.

*Roberds, P. J.,* and *Lee, Holmes* and *Arrington, JJ.,* concur.