McGILL, et al. *v.* CITY OF LAUREL, et al.

No. 43451 April 12, 1965 173 So. 2d 892

October 12, 1964 168 So. 2d 50

*Melvin, Melvin & Melvin*, Laurel, for appellants.

*Welch, Gibbes & Graves, Walker, Dillard & Baldwin, Warner Beard, Jr.,* Laurel; *Butler, Snow, O'Mara, Stevens & Cannada, Roger C. Landrum, John A. Crawford,* Jackson, for appellees.

BRADY, TOM P., J.

This is an appeal from a final judgment of the Circuit Court of the Second District of Jones County, Mississippi. Appellees herein filed demurrers to the amended declaration of appellants, which were sustained. It is from the order sustaining the demurrers that the appellants prosecute this appeal. However, no appeal is taken from the order sustaining the demurrer of the Mississippi State Highway Commission. Appellants are predicating their contention and arguments upon the sole question of whether or not their amended declaration stated a good cause of action. Appellees restrict their briefs in rebuttal to this one question presented by the briefs of appellants. The pertinent facts that are revealed by the pleadings, stated as tersely as possible, are as follows:

The appellees, named in the original declaration, demurred thereto and the appellants amended their declaration. The amended declaration was filed against the City of Laurel, Mississippi; R. G. Brown, Jr., and wife, Dorothy Brown, individually, and as partners doing business as R. G. Brown, Jr. and Company, of Louisville, Mississippi; J. B. Michael & Company, Inc.; Jett Drilling Company, Inc.; A. A. Bush and D. D. Bush, a partnership, doing business as A. A. Bush, Contractor; and James Wray Bush and Harry Bush, Co-Execu-

tors of the Estate of A. A. Bush, Deceased; and the Mississippi State Highway Commission. This appeal is prosecuted against all of the appellees save, as stated, the Mississippi State Highway Commission.

The dominant facts and the negligence charged in the declaration of the appellants are as follows:

(1) The appellants are the mother and sister of Jerry Winfred McGill, the deceased, who was drowned in a lake or pond located on property owned by the City of Laurel and allowed to become dangerous, or maintained in a highly dangerous and negligent manner.

(2) The deceased, Jerry Winfred McGill, was six years old at the time of his death.

(3) The lake was owned by the City of Laurel and had been dug or constructed in such a careless and negligent way that the sides of the bar pit were several feet high above the water; the east end of said pit was flat and easily accessible and approachable by children but from the opposite side thereto exit could only be made by scaling perpendicular walls. In other words, one would be trapped unless he was a mature age or a good swimmer.

(4) The other children and the deceased had been playing around the bar pit, using it for a swimming pool, which was known by the defendants.

(5) The said bar pit was attractive to children and would tend to entice children thereabouts to play and swim in it, and the defendants knew the tendency of children, especially boys, to go swimming in the lake or bar pit, and to play around the edges of the water, and knew, or should have known, it would be dangerous to children of the age of deceased, and that defendants negligently failed to remedy this situation.

(6) The condition of the bar pit was deceiving to the average mind, and especially to an immature mind, and defendants should have foreseen the danger to children playing about this bar pit and undertaking to swim

therein. This bar pit was near several streets and a residential section in the suburban district in and around Laurel, where a great number of children lived and sought entertainment.

(7) The defendants knew this, and failed to erect any guards or warnings of the dangers whatsoever.

(8) On May 20, 1960 Jerry McGill, along with other boys, undertook to go swimming in the bar pit. After entering the lake, he was unable to scale the banks or to reach shallow water before drowning.

(9) The flow of water was changed so that the bar pit filled up and it was left that way by appellees, which appellants alleged to be a dangerous condition.

(10) The bar pit was filled with swimming equipment or floating timbers upon which boys could float, and with boats and springboards, and with marine life, which were attractive and easily accessible to children. Paths were nearby which were traveled by children and the general public, but appellees failed to fence the bar pit, or to warn or guard against any child getting drowned; this bar pit was owned by the City of Laurel, which knew, or should have known, the habits and inclination of boys to go swimming in a pond of this nature.

It is upon this declaration that appellants allege the responsibilities of appellees for the death of the deceased. The record discloses that after the circuit court sustained the demurrers filed by appellees, the appellants then made a motion to amend their declaration or, in the alternative, to be allowed an appeal. This motion was overruled by the court, but the court allowed, as it had to do, an appeal. Appellants concede that the paramount question now before this Court is: Did their amended declaration state a cause of action?

It is to be noted that two specific assignments of error were presented by appellants, the first being that the trial court erred in sustaining the demurrers of the appellees, and the second being that the trial court

erred in refusing to allow appellants to amend their declaration. Since appellants did not argue or present any authorities to the court in support of the second error assigned, it was not necessary for appellees to reply thereto, nor is it necessary for this Court to pass upon the second error assigned since the appellants do not urge it or cite any authorities in support thereof. Newsom v. Newsome, 226 Miss. 696, 85 So. 2d 221 (1956); E. L. Bruce Co. v. Brogan, 175 Miss. 208, 166 So. 350 (1936).

In passing, however, if the lower court had permitted appellants to amend the declaration as requested in their motion, we do not feel that this amendment would sufficiently bolster or strengthen the amended declaration as it is now before us, to state a cause of action, and we would still be faced with the basic question of whether or not the amended declaration stated a cause of action sufficient for submission to the jury. A careful consideration of the declaration clearly shows that appellants predicated their cause of action upon the doctrine of attractive nuisance or the turntable theory. In appellants' effort to fix liability for the child's unfortunate drowning while swimming in the bar pit, the declaration likewise established the fact that the deceased boy had entered the property owned by the City of Laurel without license, invitation, or other right, and for a definite purpose of his own, and that he was a trespasser at the time of his regrettable death. Initially, the legal principle proposed by appellants in their brief is generally not recognized by the majority of the courts of this country when applied to bodies of water, natural or artificial, as is stated in 65 C. J. S. *Negligence* section 29 (12 j.) (1950).

The general inapplicability of the theory advanced by appellants and Mississippi's refusal to recognize its application to water hazards are found in Annotation, 8 A. L. R. 2d 1259 *Child's Drowning — Landowner's*

*Liability* section 2 (1949), from which we quote as follows:

> Since water hazards exist everywhere, the tendency even in jurisdictions which recognize the attractive nuisance doctrine under other circumstances, is to refuse to apply it to permit recovery for the drowning of a child. Thus, it has been consistently refused application in drowning cases in Alabama, Arizona, Colorado, Georgia, Iowa, Kentucky, Mississippi, Oklahoma, Oregon, South Dakota, Wisconsin, and Canada.

The question of whether the lower court erred in sustaining the demurrers of the appellees is conclusively answered in the following cases: Vincent v. Barnhill, 203 Miss. 740, 34 So. 2d 363 (1948); Bonhomie & H. S. Ry. v. Hinton, 155 Miss. 173, 124 So. 271 (1929); McComb City v. Hayman, 124 Miss. 525, 87 So. 11 (1920); Thompson v. Illinois Cent. R. R., 105 Miss. 636, 63 So. 185 (1913); Mackey v. City of Vicksburg, 64 Miss. 777, 2 So. 178 (1887). Therefore, for almost three-quarters of a century the attractive nuisance doctrine as to water has been consistently rejected by the Supreme Court of this state. In addition to these controlling decisions by this Court, there are decisions by other state supreme courts which are in perfect accord with the rule adopted by this Court, which will be hereinafter considered. The Mississippi rule is thus recognized by other authorities, as can be seen in 38 Am. Jur. *Negligence* sections 94, 109, 144, 147, 151, 152; likewise, in 8 A. L. R. 2d pages 1254, 1259, 1287, 1288, 1298, 1299, 1300, 1361; also, 65 C. J. S. *Negligence* section 29 (8), (12 j.).

All of these authorities clearly establish the fact that Mississippi follows the general rule with reference to attractive nuisance not applying to water hazards unless there be some differentiable fact or circumstance which will give this Court the authority for abrogating the general rule commonly recognized with reference to the attractive nuisance theory not applying to water

hazards. Since there are numerous grounds of alleged negligence charged in the declaration, it is encumbent upon us to briefly consider all of the grounds and determine therefrom whether a cause of action against the appellees was sufficiently stated.

The case of Eades v. American Cast-Iron Pipe Co., 208 Ala. 556, 94 So. 593 (1922), is a case which is strikingly similar to the case at bar insofar as the facts and rule of law are concerned. It is a cynosure for the case at bar. The declaration in the Eades case states a stronger cause of action against the defendant therein than does the declaration in the case at bar. The pool in the Eades case was only eight feet from a public highway and the water extended from the defendant's land partially into a public street or road in the city of Birmingham, and furthermore there was a hidden hole in the pit or pool, eight feet in depth, which was unknown to the plaintiff's son. In affirming the lower court's order in sustaining the demurrers to the plaintiff's declaration, the Supreme Court of Alabama said this in 94 So. 594:

The general rule of law applicable to this case, and which is approved by the great weight of authorities, is found in 20 R.C.L. on Negligence in section 85 . . . No count as amended in the complaint avers facts showing a legal duty owned by defendant to plaintiff's son, which it neglected to perform, and which was the proximate cause of his death. This was necessary to state a cause of action against the defendant, and to render it liable for damages to plaintiff in this case. There can be no actionable negligence without the breach of a legal duty. Athey v. Tenn. Coal, Iron & R. Co., 191 Ala. 646, 68 South. 154; Thompson v. Alexander City Cotton Mills Co., 190 Ala. 184, 67 South. 407, Ann. Cas. 1917A, 721; 20 R. C. L. (Negligence) sec. 85; Savannah F. & W. Ry. Co. v. Beavers, 113 Ga. 398, 39 S. E. 82, 54 L. R. A. 314; Riggle v. Lens,

71 Or. 125, 142 Pac. 346, L. R. A. 1915A, 150, Ann. Cas. 1916C, 1083.

It is obvious, therefore, that the Eades case involved an excavation similar to that detailed by the appellants in the case at bar; it involved a young boy six years of age with apparently the same qualities as in the case at bar. It contained allegations that the pit or excavation should have been guarded or fenced; and, among other allegations similar to the case at bar, it contained a declaration alleging that the excavation was a trap or pitfall. The Alabama Supreme Court deliberated the sufficiency of the declaration which is almost identical to the one at bar, and it emphatically denied that there was a cause of action stated. The Eades case moreover had one further allegation which was not contained in the appellants' declaration or their amended declaration, namely, that the creation of the excavation, or that the excavation itself, was the proximate cause of the child's death. This legal essential in all negligence actions is wanting in appellants' declaration.

Conceding every fact well pleaded touching on liability, does the declaration allege the prerequisite facts to constitute a legal attraction?

In Bonhomie & H. S. Ry. v. Hinton, 155 Miss. 173, 124 So. 271 (1929), we defined what constitutes attractiveness in law and its limitations insofar as an attractive nuisance is concerned, as follows:

While it is necessary to the applicability of the doctrine now under discussion that the instrumentality or condition involved in the particular case should be attractive to children as well as dangerous to them, a statement that any agency which is dangerous and attractive to children may constitute an attractive nuisance is entirely too broad, and leads to absurdities, for there is practically no limit to what may attract children. It is manifest that many things ordinarily in existence and use throughout the country are both

attractive and dangerous to children, and to hold that such things amount to an implied invitation to enter would be contrary to reason, lead to vexations and oppressive litigation, and impose upon property owners such a burden of vigilance and care as would materially impair the value of property and seriously cripple the business of the country. Accordingly, it is usually considered that in order that the doctrine may properly be applicable, the condition or appliance must be something unusual and which is of a nature rendering it peculiarly or unusually attractive or alluring to children. 45 C. J. pp. 765, 766.

We furthermore pointed out in the Hinton case this Court's reservation in the application of the attractive nuisance theory by stating:

There is a distinct tendency in the decisions of late years to restrict rather than extend the doctrine commonly known as the turntable or attractive nuisance doctrine. An examination of the cases of Thompson v. Railroad Co., 105 Miss. 636, 63 So. 185, 47 L. R. A. (N. S.) 1101, and Salter v. Lumber Co., 137 Miss. 229, 102 So. 268, particularly the terms of the reasoning employed by the judges therein, will disclose that our own court has aligned itself with this tendency.

Appellants contend that, because the declaration refers to the shape of banks, the presence of water, debris and marine life, and because the declaration alleges that the bar pit is in the proximity of certain traveled ways, they have sufficiently defined the scene of the unfortunate drowning as to be legally attractive or alluring. With this contention, we cannot agree. We do not find that the declaration set forth any allegation which makes this water-filled excavation any more of an attraction than a normal pool of water, and in support of our position, we cite the case of Vincent v. Barnhill, 203 Miss. 740, 34 So. 2d 363, 364, 366 (1948), wherein we denied the application of the doctrine of attractive

nuisance to water hazards. In the Barnhill case the alleged attractive nuisance was a concrete vat some thirty-five feet long and some five feet deep, that was clearly visible from the highway skirting the defendant's property. In that case the plaintiff's seven year old boy was found drowned in the concrete pit. We held that the defendant should have had a directed verdict, and we said:

> That a pond of water is attractive to boys for the purpose of play, swimming, and fishing no one will deny. But its being an attractive agency is not sufficient to subject the owner to liability. It must be an agency such as is likely, or will probably, result in injury to those attracted to it. That many boys every year lost their lives by drowning is a matter of common knowledge. But the number of deaths in comparison to the total number of boys that visit ponds, lakes, or streams for purpose of play, swimming, and fishing is comparatively small. It would be extending the doctrine too far to hold that a pond of water is an attractive nuisance, and therefore comes within the turntable cases. The great weight of the authority supports the foregoing announcement by the Iowa Court.

The appellants' declaration did not allege facts which would constitute the essential elements of attractiveness under the attractive nuisance theory as set forth in the Barnhill case. At best, the allegations of the appellants would constitute nothing more than a mere possibility that a child would drown in the bar pit alleged to have been made by the appellee Mississippi State Highway Commission, in concert with the other appellees.

Just as it was denied in the Barnhill case that the plaintiff's declaration was sufficient to establish the fact that the vat constituted a trap since there was no factor to show that the pool of water was hidden or secret, so likewise, in the case at bar, we fail to find

that there was a trap, and therefore we do not believe that, because there was swimming equipment, debris, or floating timbers on which boys could float, boats, and springboards, this constituted a hidden or secret trap within the meaning of the term so as to create liability against the appellees. The appellants' declaration is insufficient in requiring of appellees unreasonable precautions which are not required by the law. The declaration alleges that this was a large artificially constructed bar pit.

In Thompson v. Illinois Central Railroad, 105 Miss. 636, 63 So. 185, 187 (1913), the plaintiff was suing for the death of her nine year old son, alleged to have been drowned because of the creation of an artificial lake with deep and dangerous holes in the bottom, the lack of an enclosure, and the lack of warning signs. The fact that children had been permitted to wade in the lake, and it was the custom to do so, and the defendant had attracted and apparently invited the child to the lake where he was drowned, is also alleged. We said in that case: ''Certainly no ordinary fence around the lot upon which a pond is situated would answer the purpose . . .'' It cannot be reasonably contended by the appellants in the case at bar that the placing of warning signs in the area, or the placing of a fence or guards around the large bar pit, if the same were practicable and reasonable, would have accomplished any results since the children could not have been kept out by them. We affirmed the sustaining of the demurrer to the declaration by the court below, even though that declaration had been strengthened by the allegation of the presence of a deep, concealed hole into which the young child fell and drowned. This rule is discussed at length in 38 Am. Jur. *Negligence* sec. 147.

The declaration of the appellants was insufficient in view of the patent danger and the child's ability to recognize natural dangers. Nowhere in appellants' declara-

tion is any allegation that the boy's drowning was caused by any danger which was hidden or latent. The necessity for such an allegation offered is discussed in 38 Am. Jur. *Negligence* sec. 151, as follows:

The character of the danger, as open and obvious, or hidden and latent, is an important consideration. . . . A danger which is not only obvious but natural, considering the instrumentality from which it arises, is not within the meaning of the attractive nuisance doctrine, for the reason that an owner or occupant is entitled to assume that the parents or guardians of a child will have warned him to avoid such a peril. Pits and excavations on land embody no dangers that are not readily apparent to everyone, even very young children.

The allegations of the appellants' declaration do not show any latent danger or condition whatsoever and is therefore insufficient to base the cause of action as alleged.

The declaration also shows that although the appellants' intestate was only approximately six years old at the time of his death, it nevertheless alleged facts indicating sufficient capacity on the part of the boy, therefore defeating the cause of action as stated. The declaration clearly states that Jerry McGill, along with other boys, decided to go swimming, as they had done before. The deceased boy is clearly shown to be one who had ability, age, intelligence, and experience in such matters sufficient to have recognized the danger, since appellants do not allege that the young boy fell from a precipitous position but that he entered the water for the purpose of swimming.

Unfortunate as this accident is, it was due to the lack of the young boy's swimming ability which, although entirely sufficient to propel him through the water on other swimming trips, was insufficient on this occasion. He drowned in water in the bar pit, just as he could

have drowned in any pool of water. The soundness of this doctrine is recognized in Athey v. Tennessee Coal, Iron & R. Co., 191 Ala. 646, 68 So. 154, 157 (1915). In that case a two or three year old child, while playing along the banks of a ditch filled with water by the defendant's operations, fell therein and was drowned. The Alabama Supreme Court affirmed the granting of a peremptory instruction to the defendant and held that a child of such tender age had the requisite facilities and instincts for an appreciation of danger.

In the case at bar the instinct of self-preservation, which is universally recognized, is far greater than in the Athey case, since appellants' deceased had the requisite ability to swim and was swimming, as he had done before in the pit, when he drowned. The Eades case, *supra,* applied the principle that a young child instinctively realizes the danger of water under facts and circumstances almost identical with the facts in the case at bar.

It should be pointed out at this juncture that the age, capacity and experience of a child of tender years in the case of contributory negligence is separate and distinct and must be differentiated from the determination of the age, capacity and experience of a child of tender years as an essential requirement in the application of the attractive nuisance theory. This distinction is made by the Supreme Court of Florida in the case of Larnel Builders, Inc. v. Martin, 110 So. 2d 649 (Fla. 1959). In that case the father of a seven year old child brought an action for his son's death when he was drowned in water adjacent to a mound of rock excavated by the defendant.

Based on these distinctions between the above named incapacities under contributory negligence and the same incapacities under the attractive nuisance doctrine, which incapacity is essential to the operation of the attractive nuisance doctrine, it is clear that the declaration is

insufficient. The declaration shows that the appellants' deceased realized the dangers of the water by experience as well as instinct.

 There is no merit in the appellants' contention that the declaration is sufficient in alleging the trap or pitfall theory. In Vincent v. Barnhill, *supra,* we stated that the concrete vat in which plaintiff's intestate drowned was not hidden or secret and none could be classified as a concealed trap. In the Eades case, *supra,* the plaintiff therein alleged in his declaration that the excavation of a pool was in the nature of a trap or pitfall. The Alabama court struck down this contention, saying therein on page 594, Southern Reporter: ''The danger of a person being drowned in it does not appear to be concealed or disguised so as to create a pitfall, it was in the open, easily seen.''

Appellants' declaration therefore clearly fails to set forth the allegations essential to establish a trap or pitfall for the reason they have not alleged any intent on the part of the appellees, nor have they alleged any concealment or disguise of any of the features alleged to be dangerous; nor did they allege any affirmative preparation of a dangerous condition with the expectation of a trespass. The allegations of the declaration allege affirmatively that instead of a trap it was an easy entrance where the water was shallow, which also made an easy exit and which could not entrap anyone.

 The appellants' declaration furthermore is insufficient in failing to allege the proximate cause of the injuries. 38 Am. Jur. *Negligence* section 152 (1941) establishes proximate cause as an essential element of the appellants' cause of action, as follows:

. . . It is essential to liability under the doctrine of attractive nuisance that the attractive thing or something inseparably connected with it must have been the proximate cause of the injury, and further, that the injury occurred by reason of the failure of the

owner or occupant to exercise ordinary care to guard the child against the peril in such thing.

This identical principle was applied by this Court in McComb City v. Hayman, 124 Miss. 525, 87 So. 11 (1921), an attractive nuisance case wherein the court reversed and rendered judgment for the defendant and pointed out that there was no evidence to show that flowers growing in a gully had attracted the child. We said in that case:

> . . . second, there is no evidence that the child was attracted from the street to the gully *by the flowers*, there being in fact nothing in the evidence from which its reason for leaving the street and going to the gully or how it came to fall therein can be determined. (Emphasis added.)

Appellants' declaration in the case at bar does not charge any place that the attractive nuisance which they seek to establish was in fact the proximate cause of the child's death. They state that it would be attractive to children and would entice children thereabouts to play and swim, but appellants failed to allege or attempt to show that the thing alleged to be attractive was the proximate cause of the child's death. Appellants have relied more upon the trap or pitfall theory, stating that the area of excavation was dangerous, rather than on the attractive features thereof. There is nothing in the declaration to indicate that the boy was attracted to the various items of debris or that he was playing therewith, or that he was floating thereupon, or that he was searching for marine life. On the contrary, the declaration shows that he drowned while swimming in the pond clearly as a result of his inability or inexperience in swimming. There is simply no charge that the presence of debris or any other condition at the pit had any causal connection with his death, and the declaration therefore falls squarely within the holding in the Hayman and the Eades cases, *supra*.

Under the rule we pointed out in Vincent v. Barnhill, *supra,* it is obvious that the appellants' declaration failed to show sufficient proximity even if the excavation could be deemed to be attractive. The appellants' declaration said it is near several streets and near a residential section; that there were roads, paths and passageways which were traveled by the general public that passed near the bar pit, but the appellants do not show that the area of excavation was visible from any such roads or paths or close to such areas, nor do they show that the excavation area in fact did attract the boy in question away from an area in which he had a lawful right to be. In the Barnhill case we stated with regard to proximity: "*. . . It does not appear that a path led by the place on his way home, and even if there had been, appellants had never consented to the entry of, or passage through, or playing in, these premises by him or other children. He was a trespasser there.*" (Emphasis added.) 34 So. 2d at 363.

In the Eades case, even though the excavation was only eight feet from a public highway, the Alabama court denied the sufficiency of a declaration very similar to the one in the case at bar. In the case at bar the appellants' declarations do not even show proximity, which was rejected in the Barnhill and the Eades cases.

Finally, the appellants' declaration is insufficient in that it fails to allege ownership, possession or control, raising a duty in the contractors. This proposition is discussed in 38 Am. Jur. *Negligence* sec. 94 (1941), as follows:

> . . . the liability of an owner or occupant of real estate in reference to injuries caused by a dangerous or defective condition of the premises depends in general upon his having control of the property. In fact, such liability depends upon control, rather than ownership, of the premises. As a general rule, liability for injuries caused by dangerous instrumentalities terminates with a cessation of control thereover; and the

liability of a landowner, likewise, is terminated ordinarily when he parts with possession of the premises in question. . . .

Appellants do not allege that the appellee contractors actually did any of the actual work in the excavating in question, but in fact allege only that the bar pit had been dug out by the defendant Mississippi State Highway Commission, in concert with and by contract with the defendant appellee contractors. Appellees are correct in their contention that it is not sufficient to merely allege concert and contract when the actual act or execution is not charged to have been accomplished in fact by the appellee contractors and it would not be sufficient that the contractors knew of any condition if they did not actually create it or control it. Appellants allege that the excavating and digging was left by the "defendants." The declaration shows that the appellee contractors were not at the site nor were they in any way in control of or in possession of any of the instrumentalities or conditions which might have been said to have caused the death of appellants' deceased. The declaration clearly shows that all proprietary rights were in the City of Laurel, which owned the fee title, and in the Mississippi State Highway Commission which had purchased the minerals. This contention urged by the appellees is supported by our ruling in the case of Mackey v. City of Vicksburg, *supra.*

It should be remembered that the City of Laurel filed a separate demurrer which cites the Mackey case as authority for its release, and with that contention we are in accord, and therefore the separate demurrer of the City of Laurel was properly sustained.

Appellants in their brief cite four cases from Mississippi, two cases from Florida, two cases from Alabama, and one case from Louisiana. We have carefully studied these cases and, in passing, wish to commend counsel representing opposing litigants in this case for their very thorough and exhaustive briefs. The fact

nevertheless remains that law in Mississippi and in the majority of states is contrary to the position which the appellants have taken, and appellants lack the authorities which are available to the appellees. The cases cited by the appellants either do not follow the majority rule, as Mississippi does, or they are clearly distinguishable. We point out the distinctions in those cases which merit discussion.

Appellants rely heavily on the case of Saxton v. Plum Orchards, Inc., 215 La. 378, 40 So. 2d 791 (1949). This case is simply in conflict with Mississippi cases. It is distinguishable, however, in other respects. In the Saxton case a four year old child was drowned in an excavation filled with water drainage. The excavation was clearly visible from Pecan Street, on which numerous houses fronted. In that case the child did not enter the water to go swimming, and the Louisiana Court simply concluded that the debris or marine life was a fact which proximately resulted in the child's death when the child was apparently playing with the debris and fell into the water and was drowned.

It is obvious that the appellants were familiar with the Saxton case when the declaration as well as the briefs were prepared. In the Saxton case the nearness of the water to the traveled highway was a hazard, and its easy accessibility was a predominant factor in determining liability. This theory was rejected by the Mississippi Supreme Court in the Hayman and Barnhill cases, *supra*. The Louisiana Supreme Court made visibility a liability creating element and cited therefor the Fincher case, where the scene of the accident was not within the sight of the street.

In the case at bar, however, appellants' declaration does not even intimate that the area in question was visible or was in sight of any place on which the deceased child had a lawful right to be. The Saxton case determined the defendant's liability on circumstantial evidence,

indicating the child was playing with marine life or debris, and while so playing he fell in the water to his death. This factual situation is quite different from that which transpired in the case at bar, where the appellants' deceased drowned while swimming and not while engaged in playing with or falling upon any item or object of debris. Furthermore, in the Saxton case the court emphasized the fact that the pool of water could easily have been fenced or filled, as was actually done later, which is not true in the case at bar.

In this regard, the case of Mackey v. City of Vicksburg, *supra,* cited by the appellants, is likewise clearly distinguishable. There, the City of Vicksburg failed to guard the dangerous pathway while it was doing the work. In the Mackey case the death complained of was caused by falling from a precipice which constituted a latent danger and does not in any way constitute authority that water hazards are not within the general rule excluding them from the attractive nuisance doctrine. The Mackey case was actually decided on the basis that the defendant accomplished an affirmative act, namely, depositing the earth cut from the hill upon the rear of the plaintiff's lot by means whereof he was enabled and invited to escape from his enclosure.

In the case at bar there is no affirmative act or invitation on the part of the appellees which could be construed to make it factually comparable to the Mackey case. This Court distinguished the Mackey case in Salter v. Deweese-Gammill Lbr. Co., 137 Miss. 229, 102 So. 268 (1924), by noting that the real basis for the decision in the Mackey case was the affirmative act of constructing a path from the decedent's home to the point of his death. It is to be noted also that in the Mackey case the liability for negligence was presented with a defense of contributory negligence and not with the question of whether the age of the child, when considered with the factors of experience and capability, would make out a case of concealed or hidden danger

sufficient under the doctrine of attractive nuisance. In the Mackey case the defense of contributory negligence, when raised by demurrer, was simply rejected when dealing with a child of six years of age. In 1887, when the Mackey case was decided, it should be noted that contributory negligence was a complete bar to the plaintiff's recovery, and this Court pointed out that it was an affirmative defense and the burden of pleading and proving it was upon the defendant.

The case of Atlantic Peninsular Holding Co. v. Oenbrink, 182 So. 812 (Fla. 1938) is clearly distinguishable from the case at bar in that there the court was dealing with a dangerous instrumentality in the form of a partially constructed seven story building on which latches had become defective, which latent defects were unknown to the deceased, and while playing upon the floor it gave way and caused the boy to fall and plunge into an unguarded elevator shaft, resulting in his death. This case dealt with contributory negligence and is not an exception to the attractive nuisance doctrine presented in the case at bar.

Another Florida case cited by the appellants is the case of Allen v. Wm. P. McDonald Corp., 42 So. 2d 706 (Fla. 1949). This case is likewise distinguishable in the first instance from the case at bar because that court, under circumstantial evidence, assumed that the child, after having been attracted to the sloping banks of white sand, fell from the said banks to his death in the water. That court held that the sand banks were deemed to not only have been an attractive nuisance factor but to have been the proximate cause of the child's death, by causing him to fall. The Supreme Court of Florida in Newby v. West Palm Beach Water Co., 47 So. 2d 527 (Fla. 1950), distinguished the Allen case by saying the reasoning in the Allen case was based upon the fact that a two and a half year old child slid down the spoil bank into the water and was drowned. In denying liability in the Newby case, the Supreme Court

of Florida established the definite requirement that not only must the danger actually attract the child but also it must have been the proximate cause of the child's death.

Appellants cite Hines v. Moore, 124 Miss. 500, 87 So. 1 (1921), in which case an eight year old child was killed in an automobile-train collision while a passenger in an automobile driven by his father. This case deals with contributory negligence and not the incapacities of a child concerned with attractive nuisances.

In Williams v. Bolding, 124 So. 892 (Ala. 1929), which case is cited by appellants, a seven year old child removed several blasting caps which were being used by the defendant and his employees, carried them to a home and was injured by an explosion. This case is easily distinguishable from the case at bar for the reason that the doctrine of attractive nuisances is limited in its application to latent dangers, and where the injuries result from perils of obvious and patent character it is not applicable. This was held in the Williams case. The Williams case does not deal with the question of attractive nuisances and water hazards, but deals with a highly dangerous explosive. The obvious danger of water is recognizable to all, even those of tender age, as it was held to the child in the Eades case, but the highly dangerous properties of a blasting cap are not obvious to a seven year old girl.

Dampf v. Yazoo & M. V. R. R., 95 Miss. 85, 48 So. 612 (1909) deals with a child who was injured while playing on a railroad turntable. Appellants urge that this case is controlling, but we simply point out that this case does not treat the attractive nuisance doctrine and does not deal with any act by drowning. This case was submitted to the jury on the issue of negligence and contributory negligence and decided thereon.

In Shemper v. Cleveland, 51 So. 2d 770 (Miss. 1951), cited by the appellants, a thirteen year old boy had

gone to a junk yard and picked up an anti-aircraft shell which was lying in the right-of-way of a street outside the defendant's junk yard. Subsequently the boy was injured when he dropped or threw the shell to the ground and it exploded. The authorities and the reasoning in the original opinion dealt only with instrumentalities and appliances in the case of a dangerous artillery shell, but were not applied to the question of the attractive nuisance doctrine by drowning. The entire question of attractive nuisances with the authorities cited in the Shemper case was recognized to have been inapplicable on a suggestion of error which is reported in 212 Miss. 113, 54 So. 2d 215, 217 (1951), since the plaintiff was not a trespasser. However, in that case this Court again stated, ". . . That the trend of the decisions in this Court has been rather to limit than to extend the Attractive Nuisance Doctrine."

In the case of Gandy v. Copeland, 204 Ala. 366, 86 So. 3 (1920), cited by the appellants in support of their contention that the declaration is sufficient by virtue of the allegations of an "artificial pond or lake," there is no merit in this contention which is tenable in view of the holdings of this Court in Thompson v. Illinois Central and in Vincent v. Barnhill, *supra*. There is no merit in the contention that the Williams case is not inconsistent with the holdings of this Court.

The case before this Court does not deal with dangerous explosives and with latent defects. This Court has dealt with the question before this Court and has definitely established the precedent of denying any application of the attractive nuisance doctrine to any type of water hazard, unless it can be clearly differentiated and shown that the general rule should not apply. This Court must be shown that there are circumstances or facts clearly distinguishable from those which apply generally in water hazard cases which will give this Court the authority to abrogate the general rule which

it has commonly recognized for so long in applying to water hazards under the attractive nuisance doctrine.

In conclusion, we pointed out in Vincent v. Barnhill, *supra,* that even in jurisdictions where the attractive nuisance doctrine has been accepted, the tendency is to limit rather than to extend it.

Those states which have rejected it, or refused to apply it, have acted on the ground that "it has its foundation on sympathy rather than on any sound principle of law, impairs property rights, imposes on every member of the community a higher duty for the protection of children than is imposed on their parents, and if carried to its logical conclusion would amount to practical insurance of children and make the ownership of property unduly unsafe, if not intolerable, or at least amount to a wide and dangerous extension of the liability attendant upon the ownership of property." Section 189 (20), 45 C. J., Negligence, p. 785.

 ██ We take judicial knowledge of that which is commonly known. There are countless thousands of cattle and fishing ponds, swimming holes, sink holes, creeks, lakes, natural and artificial, swamps, bayous, and other bodies of water, large and small, which dot and cover the farms, forests and open lands of this state. Therefore, to sustain the appellants' contention herein would be tantamount to holding that the owners of land, on which the above named bodies of water are located, are the insurers of the safety of children who might trespass thereon, and therefore could be held liable for the death of a child who, while playing or swimming therein, was drowned. As we have heretofore indicated, such an extension of a rule of law would not only be unjust, but preposterous. Wisdom, the disciple of experience, advocates the extension of a rule of law only so far as reasonable necessity requires.

From the foregoing, it is apparent that appellants' declaration does not sufficiently state a cause of action

against the appellees and there are no extraordinary circumstances shown in the declaration that would justify this Court in abrogating or modifying the position long recognized in this state, that pools and ponds ordinarily are not to be treated as attractive nuisances. Therefore, this case is affirmed.

Affirmed.

*Lee, C. J., and Gillespie, Rodgers, and Jones, JJ.,* concur.

## ON MOTION TO DOCKET AND DISMISS

Rodgers, J.:

This cause was filed in the Second Judicial District of Jones County, Mississippi, and demurrers were filed to the amended declaration. An order was entered sustaining the demurrers and the case was dismissed with prejudice on June 4, 1963. On the following June 14th (the last day of the May term) the plaintiff filed a motion asking leave of the court to amend her declaration, or, in the alternative, for an appeal. The court entered an order on that date taking the plaintiff's motion under advisement for decision in vacation. No action was taken on the motion during the following vacation or during the regular August term of the court, or during the vacation following the August term. At the November term (November 22, 1963) the court entered an order setting the case for hearing in vacation on December 16, 1963. On that date, the matter was heard and the judge entered an order overruling the motion of plaintiff to amend her declaration. Thereafter, on December 19, 1963, plaintiff gave notice to the court reporter, and on February 15, 1964, the plaintiff filed her appeal bond. The defendants have filed a motion in this Court to docket and dismiss the plaintiffs' appeal based upon the ground that the judgment entered in the circuit court on June 4, 1963, was a final judg-

ment and the ninety-day statute of limitation for an appeal (§753, Miss. Code 1942, Rec.) began to run on that date, so that when the appeal bond was filed, the plaintiffs' right to appeal was barred.

Movants have cited as authority for their motion, Jacobs v. New York Life Insurance Company, 71 Miss. 656, 15 So. 639, wherein this Court said: "It is not the duty of the court to offer the plaintiff leave to amend when a demurrer is sustained to the declaration. If desired, it must be asked for, and, if leave to amend is not *obtained* during the term, the judgment is final, and the case disposed of, so that costs may be taxed, and an appeal may be prosecuted from the judgment as final." (Emphasis supplied.) The expression of the Court, above-quoted, points up the fact that it is the duty of the parties to ask for leave to amend; this expression, however, would have been more in accord with the practice and more exact had it read "if leave to amend is not *requested* during the term, the judgment is final."

We held in Moore v. Montgomery Ward & Co., 171 Miss. 420, 156 So. 875 (1934), that "An appeal from a judgment in the circuit court is not allowed until that judgment is actually final (sections 13 and 3361, Code 1930) ; and since the judgment is under the control of the trial court until the motions mentioned are finally disposed of, it follows that not until that time does the judgment have that quality of finality which puts the statute of limitations in respect to appeals into operation. It would be an odd situation that an appeal should be allowable to this court, to set aside a judgment and grant a new trial, while a motion for a new trial remains pending before the trial court whereunder the trial court could, and perhaps would, do all that is sought by the appeal; and it would be an odd situation, too, if a case could remain pending in the trial court on an undecided motion for a new trial, and at the same time be pending

in this court on appeal; and it is a familiar principle that no statute of limitations runs against a party until he is allowed by law to do the thing as to which the statute is interposed.''

We said in the case of Johnson v. Miss. Power Co., 189 Miss. 67, 196 So. 642 (1940) ''* * * if a motion for the setting aside of a judgment is filed before the end of the term of the court at which it was rendered, the finality of the judgment is thereby suspended and the limitation on the time for an appeal begins when, but not until, the motion is disposed of.'' See also Gulf, Mobile & Ohio R. Company v. Forbes, 228 Miss. 134, 87 So. 2d 488; Edwards v. Peresich, 221 Miss. 788, 74 So. 2d 844 (1954); Armstrong v. Moore, 112 Miss. 511, 73 So. 567 (1917); DeWitt v. Thompson, 192 Miss. 615, 7 So. 2d 529 (1942).

In the case of Mayflower Mills v. Breeland, 168 Miss. 207, 149 So. 787, wherein an appeal was taken within six months after rendition of order overruling a new trial, this Court said ''We have since held that, where a motion for a new trial is not disposed of at one term of court, it is continued until the next term and remains to be acted upon by the court at a subsequent term. * * * We therefore hold that the appeal was not barred at the time it was taken in this case, having been taken within six months after the rendition of the court's order overruling the motion for a new trial.''

In the instant case, although it is true, that it is the duty of the court to hear and determine vacation matters and deliver opinions in writing at the next term of court (§ 1522, Miss. Code 1942, Rec.), the fact that the motion was not heard in vacation following the May term of court does not mean that the motion became moot, or that the former judgment became final; because all suits and proceedings remaining undecided at one term of court stand continued of course until the next term (§ 1649, Miss. Code 1942, Rec.), and this ap-

plies to motions as well as to other proceedings (Willette v. State, 219 Miss. 793, 69 So. 2d 407).

Section 1519, Miss. Code 1942, Rec., was amended by the Laws of 1962, Chap. 297, so as to permit the court to determine all demurrers and motions in vacation, in the discretion of the court on ten days' written notice. In the case of Hyde Construction Co., Inc. v. Highway Materials Co., 248 Miss. 564, 159 So. 2d 170, this Court held that the notice could be waived when all persons appeared at the hearing in vacation. Notice under this section is not required when the court sets a definite date in term time for a hearing in vacation. █ In accordance with the foregoing authorities, we are of the opinion, and so hold, that the motion to docket and dismiss should be, and is, hereby overruled.

Motion to docket and dismiss overruled.

All Justices concur.